No. 22,643.

FANNIE HOWARD, *Appellee*, v. THE MARSHALL MOTOR COMPANY, and THE PACKARD-WICHITA MOTOR COMPANY, *Appellants*.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Negligence of Servant in Driving Automobile—Injuries—Liability of Master.* Where an employee is sent in an automobile upon an errand and during the return trip by a direct route inflicts injury in consequence of his reckless driving, the liability of his employer to the injured person is not affected by the fact that he had taken a friend in the car with him and was speeding for their common enjoyment.

2. TRIAL—*Voir Dire Examination of Juror.* The decision of the trial court as to the good faith of questions asked of a juror on his *voir dire* held to be final.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed May 8, 1920. Affirmed.

*Fred Stanley, Claude C. Stanley, Benjamin F. Hegler,* and *George Siefkin,* all of Wichita, for the appellants.

*Robert C. Foulston,* and *George H. Beach,* both of Wichita, for the appellee.

The opinion of the court was delivered by

·MASON, J.: Lemuel Miller, a porter in the employ of two motor companies at their garage and salesroom, was driving

an automobile along the street at a speed estimated at from
thirty-five to fifty miles an hour, when he ran into another car
on a cross street with such violence as to drive it upon the
sidewalk, injuring Fannie Howard, who was standing there.
She brought action against the companies and obtained a
judgment against them, from which they appeal.

1.  They contend that the evidence did not warrant a finding
that at the time of the injury Miller was engaged in the serv-
ices of his employers, but on the other hand showed con-
clusively that he was driving for his own pleasure.  Miller
as a witness for the plaintiff gave evidence tending to show
these facts:

He was called the head porter.  His duties included wash-
ing and cleaning cars, delivering them, and demonstrating
cars—doing the driving.  When the general manager of the
companies wanted a man for work around the garage Miller
would bring one to him.  On the day of the accident Miller
backed a car out of the garage to let another one through,
and while he was still in the car (which belonged to a cus-
tomer) the manager told him to go and find a suitable porter
and put him to work washing a car which was then on the
rack.  Without getting out of the car he drove several blocks
to a barber shop where he thought he could find two men that
he had in view for the purpose.

He was not asked whether he found either of the men for
whom he was looking, and his testimony did not specifically
cover that point.  It might be inferred, however, that they
were not there, for he testified that after going to the barber
shop he started back to the garage and was on the way there
when the collision took place.

Much of this evidence was contradicted, but that of course
is not now material.  If the jury credited it, and that must
be assumed, the conclusion was justified that Miller at the
time of the accident was driving the car while upon an errand
for his employers—while returning to the garage after having
made the trip upon which he had gone in their behalf.  In
that situation there can be no doubt of the liability of the
defendants for the consequences of his negligent driving.

The defendants introduced evidence, which the jury by their
special findings showed that they believed, that as Miller

Howard v. Motor Co.

turned his car near the barber shop he saw a friend who, at his invitation to go on a spin with him, got into the car and accompanied him on the remainder of the trip, the accident occurring on a direct route to the defendant's place of business.

In returning with the car to the garage Miller was as much in his employers' service as while he was on the outbound part of the journey. (*Thompson v. Machinery Co.*, 96 Kan. 259, 150 Pac. 640.) And the fact that he took a friend on board to enjoy with him the pleasure of a run in violation of the speed limit does not affect the legal aspect of the matter. He was of course disregarding his duty to his employer in the way he managed the car, but his misconduct was in doing in a wrongful manner what he was employed to do properly— he was acting within the scope of his employment. The case is well within the rule illustrated by *Roberts v. Kinley*, 89 Kan. 885, 132 Pac. 1180, and the facts are obviously quite different from those on which the decision was based in *Toadvine v. Sinnett*, 104 Kan. 111, 178 Pac. 401. If there had been a deviation from the direct line of travel on a return to the garage, the defendants' liability might have been affected according to the particular circumstances (Note, 17 N. C. C. A. 659; 4 N. C. C. A. 27), but under the evidence and the findings there was none. Miller's asking and allowing a friend to ride with him, such conduct not having been forbidden and not having been the cause of the accident, could obviously not affect the liability of the defendants. Even where an agent sent in an automobile on an errand for his principal takes in a guest for whose accommodation he deviates from the direct route, it has been held that his employer may be liable for the results of his negligent driving. (Note, 17 N. C. C. A. 663-665.)

2. The plaintiff's attorney was permitted over objection to ask a juror on his *voir dire* whether he was a stockholder in any corporation and whether he was a policyholder in any mutual insurance company which had for its purpose the insuring of persons against actions for damages arising by virtue of accidents. The defendants complain of this on the ground that the questions were not asked for the purpose of developing any information concerning the juror that might tend to suggest a bias on his part, but solely to lead the jury

to infer that if a judgment were rendered for the plaintiff the loss would ultimately fall, not upon the defendants, but upon some insurance company. The trial court must be deemed to have decided that the questions were asked in good faith, and as its opportunity for forming a judgment on that matter was better than ours, its determination must control, there being nothing in the record that compels a contrary conclusion. (*Swift v. Platte,* 68 Kan. 10, 74 Pac. 635.)

The judgment is affirmed.

WEST, J. (concurring specially): While I agree with the foregoing, I am unable to see why the courts, in respect to a defendant's indemnity, should ever feel called upon to "walk softly like the gods whose feet are shod with wool," or why any impenetrable obscuration should envelop so simple and so common a situation.

Why should not the jury know who the real party in interest is, the same as they may know who is putting up the security for costs or who is paying the expenses of a witness?

To invest the fact of the defendants' insurance with the sanctimonious camouflage of a manufactured reverence is to my mind the superlative quintessence of judicial ineptitude.