No. 29,106.

A. L. Billings, *Appellant*, v. R. G. Aldridge, R. G. Aldridge Construction Company, and T. W. Nelson, *Appellees*.

(284 Pac. 404.)

Opinion filed February 8, 1930.

*Burt Comer* and *Harold H. Malone,* both of Wichita, for the appellant.

*W. A. Ayres, Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs,* all of Wichita, and *W. N. Calkins,* of El Dorado, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by the plaintiff from a judgment in favor of the defendants in an action for damages against a contractor and his foreman, who were constructing a culvert in a public highway, for injuries received when the car in which plaintiff was riding ran into the open culvert.

The plaintiff alleged negligence on the part of the defendants in not placing the warning required by the statute, or any other warning or sign of any nature, at the intersection a short distance west of the culvert; also in not placing any guard rails, obstructions,

hindrances, red lantern or notice or warning near the open culvert; also that the negligence was wanton and willful. The petition further alleges that such negligence was the proximate cause of the injuries plaintiff received when the car in which he was riding in the nighttime fell into the open culvert. The answers deny the allegations of the petition and allege contributory negligence, and that defendants did maintain lighted lantern and sufficient barricades on each side of the construction work. The reply was a general denial.

The plaintiff was a dentist about fifty years of age, residing in Wichita, and was going to Butler, Mo., with Allen Elliott, at the invitation of Mr. Elliott, without charge, in Elliott's new Graham-Paige automobile. The other passengers were three of Allen Elliott's brothers and a brother-in-law. They had started from a point near Kechi about 3:30 in the morning of September 15, 1928, and reached the place of the accident about 5 a. m. The work on the culvert had been commenced the afternoon before by the defendants, and it had been excavated about five feet wide and two feet deep entirely across the made road. It was located about seventy feet west of a highway intersection over which the car passed just before reaching the place of the accident. The evidence showed there were two trees with brush on them across the road about twenty-one feet west of the culvert, and a white or farm lantern in the middle of the road on a little mound of dirt about half way between the trees and the culvert. The car crossed the highway intersection at the speed of about 35 miles an hour. The driver and plaintiff saw the trees in the road, but not the lantern. The driver veered around to the south end of the trees and back into the main part of the road before seeing the culvert and could not stop in time to avoid going into it. The plaintiff, sitting in the back seat, had his hands on the rail on the back of the front seat, and when thrown forward had both wrists broken, and suffered other injuries. The plaintiff, the driver, and three of the four others in the car testified as to the speed of the car and seeing the trees across the road. Others testified as to being able to see the trees and the lantern at a considerable distance away from the culvert.

The jury rendered a general verdict for the defendants and answered a number of special questions submitted by the court. After overruling the motion for new trial the court rendered judgment on the verdict for the defendants.

The principal errors assigned by the appellant are the giving and refusing to give certain instructions to the jury, the submitting of certain improper and impertinent questions to the jury, and not sustaining the motion for new trial on account of such errors.

We are at a loss to understand the necessity or purpose of giving instruction No. 20, which informed the jury that there was a law in Kansas against crossing intersections of highways at a greater rate of speed than eight miles per hour. Of course such information was correct, and it was also a fact, as stated in the instruction, that there was evidence in the case that the automobile in which the plaintiff was riding was traveling at a higher rate of speed than eight miles an hour at the highway intersection just west of the culvert. Most of the evidence showed the rate to have been thirty-five miles per hour, which is, of course, more than eight. After telling the jury of the existence of this law and referring to the evidence showing a violation of it by the plaintiff, the court then proceeded to instruct the jury that the law was intended to prevent collisions and accidents at or within the intersection, and that the rate of speed at the intersection would not of itself make the plaintiff guilty of negligence, but the jury might take into consideration the rate of speed just before the accident. The general construction of the law to which the court referred was in harmony with the decisions of this court (*Walker v. Faelber*, 102 Kan. 646, 171 Pac. 605; *Barshfield v. Vucklich*, 108 Kan. 761, 197 Pac. 205; *Sheldon v. Wichita Railroad and Lgiht Co.*, 125 Kan. 476, 264 Pac. 732), but the statement that it would not of itself make the plaintiff guilty of negligence readily enabled the jury to supplement it from other evidence to complete the guilt in taking the speed feature at the intersection into consideration. It may have been that the case was presented and tried on the theory that a speed in excess of eight miles per hour at the intersection would constitute negligence. If such was the theory, it was apparently outside of the issues, as a matter of fact as well as a matter of law, for we do not find any such specific defense in the answer, and if such was the theory it was wrong, as the instruction in a general way stated, and possibly if such theory was advocated the court might have felt compelled to give such instruction in justice to all parties. We observe from the evidence that every witness who testified as to the accident was asked as to the speed of the automobile when crossing the intersection and very few were asked as to the speed at any other point, and one witness was asked

as to crossing other intersections on that trip and how many such there were.

If the court meant in effect to withdraw from the jury the application of all of the evidence tending to show a violation of the speed law at highway intersections as affording any proof of negligence of the plaintiff in this case, then we are at a further loss to understand the consistency of submitting three questions specifically on that identical feature of the case even to the extent of naming a speed of eight miles an hour, and three other questions with specific reference to crossing the intersection without naming the speed. These six questions and answers are as follows:

"Q. 3. At what rate of speed was the automobile in which the plaintiff was riding moving as it crossed the highway intersection just west of the ditch in question? A. At least thirty-five miles per hour.

"Q. 6. If the car in which plaintiff was riding had crossed the intersection just west of the ditch in question at eight miles per hour, and no more, could the car have been stopped after reaching the brush and before reaching the ditch in question? A. Yes.

"Q. 13. If the car in which plaintiff was riding had crossed the intersection just west of the ditch in question at eight miles per hour, and no more, would the accident have occurred? A. No.

"Q. 14. Had the driver of the car in question so operated the car with reference to speed at road intersection before reaching the intersection west of the culvert as to reasonably lead the plaintiff to believe that the driver of said car would reduce his speed to not more than eight miles per hour while going over a highway intersection? A. No.

"Q. 15. Was there anything to prevent the plaintiff from seeing the road intersection just west of the culvert as he approached said intersection? A. No.

"Q. 16. Would a person riding in a car under the conditions under which the plaintiff was riding when he approached the intersection west of the culvert have seen said intersection had he been exercising reasonable and ordinary care for his own safety? A. Yes."

Three of these questions at least seem to us to be entirely out of harmony with the main idea and principle expressed in the instruction criticized above. They laid the premises and called for answers that the court undertook to tell the jury in general in instruction No. 20 would not establish contributory negligence. In spite of all the court had done or could do in the way of instructions to the contrary, the repeated reference to the intersection and the speed of eight miles per hour would naturally impel the jurors to hark back to the violation of the speed law of which the court had informed them. There could be no more conclusive proof of such being the

state and condition of their minds than the answer they gave to question No. 11, in absolute disregard of the general purport of instruction No. 20. That question and answer are as follows:

"Q. 11. If you answer the last question 'yes' then state what acts constituted such contributory negligence. A. Failure to slow down to eight miles an hour at the road intersection and failure of plaintiff to make objection and call the attention of the driver to the fact that he was not exercising ordinary care to prevent accidents."

We think at least three of the above questions should never have been submitted to the jury and that it was error to overrule the objection of the plaintiff thereto. A similar situation existed in the case of *Loveless v. Ott,* 121 Kan. 728, 736, 250 Pac. 324, where the court took away from the jury a certain question and instructed it not to consider it in reaching its verdict and later submitted special questions on the matter, and the court said "ordinarily special questions should not be submitted to a jury which are not material to a decision of the case," referring to the case of *City of Wyandotte v. White,* 13 Kan. 191, where the court had said—

". . . the court should submit only such questions as bear upon facts material to the issues, and whose answers may in some way control or affect the general verdict." (Syl. ¶ 3.)

The following are some of the views of this court on this question in earlier cases:

"The main object of special questions is to bring out the various facts separately, in order to enable the court to apply the law correctly, and to guard against any misapplication of the law by the jury." (*Morrow v. Comm'rs of Saline Co.,* 21 Kan. 484, 503.)

"The trial court should have refused to submit questions to the jury which had no evidence to warrant them, or which related to points not in dispute, or upon elements of damages wholly withdrawn from the jury by the charge." (*Sugar Co. v. Riley,* 50 Kan. 401, 408, 31 Pac. 1090.)

"It is the duty of the court to revise the questions presented, striking out all which are mere repetitions, or touch immaterial facts, and changing and arranging the others so that, in a natural order, clearly and briefly, are presented the questions which are necessary to bring out any particular fact or facts desired." (*Mo. Pac. Rly. Co. v. Holley,* 30 Kan. 465, syl. ¶ 1, 1 Pac. 130.)

"A court should never submit special questions that are intended or are liable to confuse or entrap the jury into making mistakes." (*Railway Co. v. Hale,* 64 Kan. 751, 753, 68 Pac. 612.)

See, also, *A. T. & S. F. Rld. Co. v. Ayers,* 56 Kan. 176, 42 Pac. 722; *Jones v. Interurban Railway Co.,* 92 Kan. 809, 141 Pac. 999; *Doty v. Crystal Ice and Fuel Co.,* 122 Kan. 653, 253 Pac. 611.

The jury in answer to question 11 found the plaintiff's negligence to be failure to slow down to eight miles an hour at the road intersection and failure to make objection to the driver. Under the main statement of the law by the court in instruction No. 20 this could not be negligence, which plainly shows the jury was badly misled by the modification of the instruction and the submission of the improper questions. The finding, however, under the strict rule would acquit the plaintiff of every other charge of negligence. (*Roberts v. Railway Co.*, 98 Kan. 705, 161 Pac. 590.)

We are inclined, not only from the general record in the case but also from an intimation in one of the briefs, to infer that the case was tried in part at least upon a theory that was admitted to be debatable and which this court thinks was unquestionably wrong. For that reason and for the errors above pointed out we are convinced that the motion for new trial should have been sustained.

"A special finding which clearly shows that the jury must have based their general verdict upon a theory of the case radically different from that contended for by the prevailing party, and not involved in the issues submitted for their determination, will authorize a reversal of the judgment." (*Aultman v. Wier*, 67 Kan. 674, syl. ¶ 3, 74 Pac. 227.)

But appellee insists that the general verdict shows that the defendants were not negligent. It would in most cases, but it does not in this particular one because of admitted negligence on the part of defendant Aldridge, although such admitted negligence may not have been the proximate cause of the injury. There was no finding to show whether such admitted negligence was or was not the proximate cause, or whether the erroneous finding of contributory negligence entered into and determined the general verdict.

Because of the peculiar manner in which the errors arose and found their way into the case we think it only fair and proper that neither party to the case be benefited or bound by any of the findings made in the case, but that the judgment and all the findings be held to have been erroneously rendered and procured, and that a new trial be granted.

The judgment is reversed and the cause is remanded with instructions to grant a new trial.