No. 29,943.

A. F. HOUSER, *Appellee*, v. JOHN O. NELSON and W. R. MAURER, *Appellants* (JOHN HOUSER, *Defendant*).

(298 Pac. 777.)

Opinion filed May 9, 1931.

*Charles B. Hudson* and *Clyde M. Hudson,* both of Wichita, for the appellants.

*John W. Adams* and *R. G. Bennett,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: Plaintiff brought this action for damages for personal injuries sustained in an automobile casualty. The defendants were partners, one of whom was driving the car at the time of plaintiff's injury. The jury answered special questions and returned a general verdict for plaintiff against all of the defendants. The two not driving the car have appealed.

Plaintiff alleged that defendants, John O. Nelson, John Houser and W. R. Maurer, were partners doing a general live-stock commission business at Wichita under the name of the Drovers Live-Stock Commission Company; that on October 26, 1927, as an employee of defendants, and riding as a passenger and guest in a car belonging to them, over which plaintiff had no control, and which

was being operated by the defendant John Houser, and while on the way from Wichita to Oklahoma and Texas on business for defendants, plaintiff was seriously injured through the negligence of the driver of the car. The defendants Nelson and Maurer answered, admitting the partnership as alleged, but denied that John Houser was operating the automobile as their agent, alleged contributory negligence on the part of plaintiff, that John Houser was intoxicated at the time of the casualty, and neither the plaintiff nor the defendant John Houser was acting as agent or employee of the partnership, or of these defendants, and they were not engaged in any business in connection with defendants, or the partnership, but that plaintiff and the defendant John Houser were engaged in a joint enterprise for their mutual benefit and for their own interest. In answer to special questions the jury found that John Houser was driving the car in which plaintiff was riding at the time he was injured; that John Houser was not intoxicated at that time; that the automobile was traveling at thirty-five miles per hour; that it hit a truck standing on the side of the highway; that plaintiff did not see the truck before it was struck by the automobile; that at the time of the collision John Houser was engaged in the business of the Drovers Live Stock Commission Company; that the defendant Maurer objected to John Houser going to Oklahoma and Texas on the business for which he was making the trip in question, and that the business for which John Houser was going on that trip was business in which the commission company had theretofore engaged. The amount of the verdict was $2,000, but in view of plaintiff's serious injuries no objection is made to that, if plaintiff is entitled to recover.

The evidence tended to show that defendants and one J. W. Schwartz were partners in the live-stock commission business, having their principal place of business at the stockyards at Wichita; that John Houser, because of his experience in that branch of the live-stock business, handled the hogs for the commission company, while Nelson and Schwartz handled the cattle and Maurer was the office man. It was not unusual for a member of the firm to go to the country to solicit business for the commission company. John Houser had made several trips into Oklahoma, Texas and New Mexico on behalf of the company for that purpose. His testimony was that he always took some one with him. In the fall of 1927 Harry Billingsly, of Mutual, Okla., who made shipments of live-stock to Wichita frequently, told defendants of hogs which might be

bought in his neighborhood and about Woodward, Okla., and through that country to Canadian, Tex. About that time there had been a demand for hogs to be shipped to California, and defendants discussed among themselves having Billingsly buy hogs for shipment to California. Some of the defendants thought Billingsly not well versed in buying hogs and did not like to leave the buying to him, as the California market took hogs of a certain type only and was an unsteady market; hence they concluded not to have Billingsly buy hogs throughout western Oklahoma and Texas to be shipped to them for the California market. The defendant John Houser thought it would be advantageous to go down into that country and solicit business for his firm, and arranged to have his brother, A. F. Houser, the plaintiff in this case, go with him, because he had good judgment with respect to hogs, and agreed to pay his expenses and "to make it right with you." Billingsly, who was at Wichita with a shipment, was to ride back to Mutual, Okla., with John Houser and plaintiff and assist in locating hogs. It seems that the defendant Maurer objected to John Houser going on the trip, or, more accurately, he did not want John Houser to buy hogs at that time for the California market. Nelson did not object to his going, and Schwartz at that time was not consulted about those matters. It seems that John Houser had in mind that Billingsly and plaintiff might buy hogs in the country if they desired, but if hogs were bought they were to be handled through the defendant commission company, which would receive a commission. John Houser did not expect to buy hogs either for himself or his commission company, but his purpose was to engineer the transactions and solicit business for his company. John Houser, Billingsly and the plaintiff left Wichita the evening of October 26, about 5 o'clock, expecting to drive to Woodward that night. They were riding in a Ford roadster of an early model which belonged to the defendant commission company. John Houser was driving. Billingsly occupied the seat with him. Plaintiff sat on the floor of the roadster with the door open and his feet on the running board. About 8:30 o'clock that evening, and when about seventy miles southwest from Wichita, traveling on an improved gravel road, they ran into a truck which had stopped on the road. The truck had pulled out to the right as far as it could until only its left wheels were on the graveled portion of the highway. It had no light, but a man on the truck, when he saw the Ford roadster approaching, attempted to warn the driver

with a flash light. John Houser was driving the roadster about as fast as it could go. He testified that when he first saw the truck he thought it was moving along the road ahead of him. When he realized it was standing still he endeavored to pull to the left around it, but did not get out far enough. In the collision plaintiff had both legs broken, Billingsly was killed, and John Houser was seriously injured.

Appellants contend that the casualty happened because of the negligence of John Houser in not using due care and in not seeing the truck and pulling around it, as he had plenty of room to do. That point is conceded by appellee; in fact, it was essential for plaintiff to establish that fact in order for him to recover.

Appellants next contend that the plaintiff and John Houser were engaged in a joint enterprise. This argument is predicated on the somewhat indefinite testimony as to just what the parties planned to do when they got to Oklahoma and Texas, and upon that part of the testimony which tends to show that plaintiff and Billingsly might buy hogs on their own account, retaining the profit in them, if there were a profit, that John Houser would supervise the buying of the hogs, and his company get a commission out of the deal. The abstracts and briefs do not clearly show that this question was presented to the court below, or point out how it would affect the liability of defendants, and for that reason we have sent for and examined the transcript of the testimony and files in the case. Examining these, it is clear that the question was not squarely presented to the court below, nor mentioned there except in the answer filed by the defendants Nelson and Maurer. No instruction on that question was requested or given, no complaint is made in this court of instructions given, and no special question was asked on that point. The case was tried in the court below on the theory that plaintiff was an employee of defendants, and instructions were given covering that branch of the case. The evidence and the instructions of the court disclose that the defenses actually made in the trial court were: (1) That the plaintiff and John Houser were not engaged in any business of the commission company at the time of the casualty. On this point the general verdict and answers to special questions are against the contentions of appellants. (2) It was contended that John Houser was intoxicated, and evidence and instructions relating to that matter were submitted to the jury, and the jury found against the contention

of appellants on that point. (3) It was contended that plaintiff was guilty of contributory negligence. By its general verdict the jury found against appellants on that point, but in answer to one of the special questions found that plaintiff did not see the truck before it was struck by the automobile in which he was riding. But appellants do not contend that the answer to this special question was contrary to the general verdict and required judgment to be rendered in their behalf, and they made no motion for such judgment in the court below.

While in this court appellants argue that plaintiff and the defendant John Houser and Billingsly were engaged in a joint enterprise, they do not point out in what way that would relieve appellants from liability. The action is not one in which a third party is suing two or more who were engaged in a joint enterprise, as was the situation in *Howard v. Zimmerman,* 120 Kan. 77, 242 Pac. 131. Neither is it an action in which one of the several persons engaged in a joint enterprise is suing a third party, such as the owner of the truck in this case, for damages by reason of his negligence; and the question is whether plaintiff is barred by the contributory negligence of one engaged with him in the joint enterprise. (See 45 C. J. 1020, 1029.) If the parties in this roadster were engaged in the joint enterprise suggested, and plaintiff, without fault on his part, was injured by the negligence of John Houser, a member of the defendant partnership and on business for it, it is quite possible plaintiff could maintain this action and recover judgment such as was recovered in this case. In 45 C. J. 1021 it is said:

"The doctrine of joint enterprise . . . has no application to actions brought by one joint adventurer against another to recover for injuries due to the latter's negligence."

(See cases there cited, also some of the cases collected in Dec. Dig., "Automobiles," § 198 [4].) But this question is not briefed, and we shall not decide it, as it is unnecessary to do so in view of the questions presented to and passed upon by the trial court. The case was presented in the trial court and recovery had upon the theory that plaintiff was an employee of defendants. There was no objection to presenting the case in the court below on that theory. The contention which appellants here made in the court below, that plaintiff and John Houser were not engaged in any business of the commission company at the time of the casualty,

was fairly presented to the court below and decided against the appellants and upon an abundance of competent evidence. Appellants are not now in position to urge that the evidence shows some other relation existing between the parties.

Appellants contend that plaintiff was guilty of contributory negligence. We think, under all the facts in this case, it was a fair question to submit to the jury. Plaintiff's testimony is that there was nothing in the conduct of John Houser, or his method of handling the car, or the speed at which he was driving, which indicated negligence, or which caused him to have any apprehension that he would likely run into a truck standing at the side of the road. This testimony is corroborated by other witnesses. At the time of the casualty they were driving on an approved graveled road, traveling at a rate of speed which was not at all uncommon, and one which did not indicate negligence on the part of the driver. Plaintiff, seated on the floor, with his feet on the running board, was naturally looking to the side. It is possible, with some inconvenience, he could have turned and kept looking down the road ahead of him. Whether it was negligence for him not to do so, in view of all the facts and circumstances, we think was a fair question to submit to the jury. Its general verdict in his favor, in the absence of any special finding of his negligence, decides that question in his favor.

We find no error in the record, and the judgment of the court below is affirmed.