### No. 30,078.

A. L. Billings, *Appellee,* v. R. G. Aldridge, R. G. Aldridge Construction Company and T. W. Nelson, *Appellants.*

(3 P. 2d 639.)

Opinion filed October 10, 1931.

*W. A. Ayres, Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs,* all of Wichita, and *W. N. Calkins,* of El Dorado, for the appellants.

*Harold H. Malone, Joseph Taggart,* both of Wichita, and *R. T. McCluggage,* of El Dorado, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action for damages for personal injuries sustained in an automobile casualty. The jury answered special questions and returned a general verdict for plaintiff, and defendants have appealed.

The case was here before (*Billings v. Aldridge,* 129 Kan. 772,

284 Pac. 404), at which time a judgment for defendants was reversed, with directions to grant a new trial, for reasons stated in the opinion. The main facts disclosed by the record before us may be briefly stated as follows: The defendant Aldridge obtained a contract from Butler county for construction work on a part of U. S..highway No. 54 east of Rosalia. The work was under charge of his foreman, the defendant Nelson. On September 14, 1928, at a point a little more than a mile east of Rosalia, they made an excavation for a culvert by digging a ditch entirely across the traveled portion of the highway about two feet deep and five feet wide, with perpendicular sides. The dirt from the excavation, or most of it, was piled on the east side of the ditch, perhaps some of it on the west side. No notices, warning signs, or detour route markings were erected, either by the defendants or by the county, as required by R. S. 68-121. At the place where the excavation had been made U. S. highway No. 54 is an east-and-west road, a part of the state highway system, was graveled a width of thirty feet, and was much traveled. On the evening of September 14 defendant Nelson had the workmen place a pile of brush on the highway about twenty-four feet west of the excavation. The brush consisted of limbs of trees, laid so the tops would lap and the butts extend toward the sides of the road. There is much difference in the testimony as to the size of this pile of brush, which appears not to have been measured by anyone. Plaintiff's witnesses estimated that it was six or seven feet long north and south, and they estimated it variously as from two to four feet high, and as being about two feet thick. Defendants' witnesses thought it was larger, especially as to its length north and south. The limbs had been taken from green trees, perhaps cottonwood, and the foliage was on them. About half way between the excavation and this brush a few shovelfuls of dirt had been piled on the ground near the center of the road, and an ordinary farm lantern, which gave a white or yellowish light, set on the pile of dirt. A passageway had been cleared around the north end of the pile of brush and excavation, but that had not been marked in any way.

Plaintiff resided in Wichita. He was about fifty years of age, a dentist, and had been engaged in that profession about twenty-five years. On the morning of September 15 he was going by automobile with J. A. Elliott, as his guest, from Elliott's home near Kechi, Kan., to Butler, Mo. It was an almost new Graham-Paige sedan,

belonging to and driven by J. A. Elliott, who had driven automobiles for about fifteen years., Other persons in the car were three of Elliott's brothers and a brother-in-law. Plaintiff occupied the back seat, directly behind the driver. They started about 3:30 o'clock in the morning, and reached the place where this excavation had been made in the road about 5 o'clock. It was still dark. The distance they had driven was about thirty-eight miles. The driving had been done at a speed of from thirty-five to forty miles per hour, except when they slowed up while passing through towns, turning corners, or for other purposes. The driver had been over the road but once, and that was several years before. Over a part of this way there had been a rainstorm, with some wind, the night before, and at two places in the highway before reaching this excavation there was brush, or a limb of a tree, in the road. The driver says that on both occasions he slowed up as he approached them and drove around them. The plaintiff saw those in each instance and observed the conduct of the driver with respect to them. As they approached from the west of the excavation made by defendants for the culvert the driver testified that he saw the brush in the road; that he slowed up a little and pulled to the right to drive around it; that about the time he got even with the brush, or shortly before, he saw the lantern, also the pile of dirt which had been thrown out by the excavating of the ditch; that he applied his brakes, and that the car went forward into the ditch. Plaintiff's testimony was that as they approached this brush he was changing his position in his seat and had taken hold of the coat rail on the back of the front seat with both hands to assist himself in doing so; that he noticed the car slow up and saw the brush just about the time they got even with it, and the lantern and ditch directly thereafter; that in perhaps a second after seeing the brush the car was in the ditch. The plaintiff was thrown forward in such a way that both his wrists were broken and he sustained other injuries. The amount of the verdict, $6,000, is not specifically complained of if plaintiff is entitled to recover. Perhaps this is because of the severity of plaintiff's injuries; at any rate we need give the amount of the verdict no special attention. The jury answered special questions as follows:

"Q. 1. If your verdict is in favor of the plaintiff, then state what act or acts of negligence you find the defendants guilty of which caused the accident. A. Failed to put up proper closed-road signs.

"Q. 3. At what rate of speed was the automobile moving as it approached the ditch in question and before the brakes were applied? A. From thirty to thirty-five miles per hour.

"Q. 4. Was the plaintiff watching the road ahead of the automobile as it approached the ditch? A. No.

"Q. 5. If the plaintiff sitting in the rear left seat of the automobile had been watching the road ahead of the automobile, at what distance west of the ditch in question could the tree limbs or brush in the road have been seen by him? A. Fifteen feet.

"Q. 6. Could the car in which the plaintiff was riding have been stopped as it approached the ditch without going into the ditch after the brush or tree limbs came into the range of vision of the headlights of the car? A. Yes, if it was recognized as a warning of danger.

"Q. 7. Do you find that the plaintiff was guilty of contributory negligence? A. No.

"Q. 9. Could the automobile in which plaintiff was riding have been stopped as it approached the ditch in question without going into the ditch after the light of the lantern came into view of those riding in the automobile? A. No.

"Q. 10. If you find for the plaintiff, then state what precaution, if any, plaintiff took for his own safety as he approached the ditch. A. Not any.

"Q. 11. If the plaintiff sitting in the rear left seat of the automobile had been watching ahead of the automobile, at what distance west of the ditch in question could he have seen the light of the lantern? A. Twenty-five feet.

"Q. 12. Was there anything plaintiff could have done to have avoided the accident after the trees or brush came into the range of vision of a person in the position of the plaintiff on the highway at the time of this accident? If so, what? A. No.

"Q. 13. Was there anything thè plaintiff could have done to have avoided the accident after the light of the lantern came into the range of vision of a person in the position of the plaintiff on the highway at the time of the accident? If so, what? A. No."

Defendants' motion to set aside the answers to special questions numbers 5, 9 and 11 as not being supported by the evidence was sustained. Defendants' motion to set aside the answers to some other special questions was overruled, also their motion for judgment in their favor on the answers to special questions 3, 4, the first part of 6, and 10. Their motion for a new trial was overruled. In this appeal they complain: (1) That the plaintiff was guilty of contributory negligence as a matter of law; (2) that the negligence which the jury found against defendants was not the proximate cause of the injury; (3) that there was misconduct of the jury; (4) misconduct of counsel for the plaintiff; (5) that the setting aside of the answers to the three special questions compelled the granting of a new trial; and (6) that there was error in not setting

aside answers to some other special questions, and in refusing to submit special questions requested.

We will discuss these questions in the order stated. Defendants argue that plaintiff was guilty of contributory negligence which barred his recovery, and ask us to so state as a matter of law. It is argued that a passenger riding in the back seat is obliged to look out for his own safety and to warn the driver of danger, citing *Cooper v. Railway Co.*, 117 Kan. 703, 709, 232 Pac. 1024, and allied cases. It is true that in whatever situation a person is he is under the duty to use due care for his own safety, but what constitutes due care depends upon the situation which he is in, and perhaps on many other circumstances. With respect to watching the road, observing possible dangers, handling the car, and the like, it is clear that the duty of the passenger in the back seat is not commensurate with that of the driver of the automobile. It is difficult to state a hard and fast rule by which it may be determined whether the passenger or guest is negligent. Circumstances may be such that he "would not be at fault if he took a nap." (*Howse v. Weinrich,* ante, pp. 132, 135, 298 Pac. 766.) As bearing on the question, see, also, *Link v. Miller,* ante, pp. 469, 472, 300 Pac. 1105, and *Houser v. Nelson,* ante, pp. 142, 147, 298 Pac. 777. Generally speaking, the question of contributory negligence is for the jury. It is only when the facts show such negligence so clearly that reasonable minds should not differ concerning it that the court can declare such negligence exists as a matter of law. In this case the car was almost new, was in good working order, and was driven by an experienced driver, and there had been nothing up to the time of the casualty to indicate to plaintiff that the driver was not using due care. The trial court submitted to the jury the question of plaintiff's contributory negligence by appropriate instructions. No complaint is made of these instructions, nor of the fact that such question was submitted to the jury. Defendants point out that the jury found, in answer to special questions: (No. 4) That the plaintiff was not watching the road as the automobile approached the ditch, and (No. 10) that the plaintiff took no precaution for his own safety as he approached the ditch, and (No. 3) that the car was traveling thirty to thirty-five miles per hour as it approached the ditch and before the brakes were applied, and (No. 6) that the car could have been stopped without going into the ditch after the brush came into the

range of vision of the headlights of the car, and it is argued that these findings convict plaintiff of contributory negligence. This conclusion does not necessarily follow. By its general verdict, and in answer to question No. 7, the jury found the plaintiff was not guilty of contributory negligence, and by Nos. 12 and 13, that there was nothing plaintiff could have done to have avoided the accident after the brush and lantern came within his range of vision. As previously stated, the evidence was that plaintiff had been observing the road ahead of the car a part of the time. On two occasions he had seen brush in the road and observed the driver slow up and drive around it; but just as the car was approaching this brush he had taken his eyes away from the road ahead of him, was busy adjusting his position in the car so he would be more comfortable, and had taken hold of the railing in front of him to enable him to do so. The answers of the jury to questions Nos. 4 and 10 were in accord with that testimony. To hold that plaintiff was guilty of contributory negligence as a matter of law, or that these findings convict him of such negligence, would be to say that a guest in the back seat must, under all circumstances, keep a sharp lookout on the road ahead, watch every possible obstruction or defect in the road, and warn the driver thereof. Such a holding would be contrary to what was said in *Howse v. Weinrich,* supra. It is clear the jury did not regard those things as constituting contributory negligence in view of all the facts and circumstances of the case, and the trial court, in approving the verdict, concurred in that view. Defendants call our attention to the case of *Elliott v. Aldridge,* 131 Kan. 29, 289 Pac. 401, which was an action by J. A. Elliott against these same defendants for damages for injuries sustained by him in the casualty in question, and say that the court found Elliott to be guilty of contributory negligence, and argue that the same holding should be made here. But in that case the question of Elliott's contributory negligence was submitted to the jury. The jury, in answer to a special question, found Elliott to be guilty of contributory negligence, which resulted in a judgment against him. That judgment was affirmed by this court on the ground that there was evidence to sustain that finding. There was no holding in that case that Elliott even was guilty of contributory negligence as a matter of law.

Appellants next argue that the acts of negligence of which the defendants were found guilty were not the proximate cause of the

injury. Broadly speaking, plaintiff charged defendants with two acts of negligence; or, more accurately, with two groups of such acts. First, the failure to put up at the intersection west of the excavation warning signs advising the public that the road was closed, advising the proper detour, and marking and lighting the same, as provided by R. S. 68-121. The court instructed the jury that the defendant Nelson, not being a contractor, could not be held liable under that group of allegations. Second, plaintiff charged both defendants with having made an excavation in the highway which rendered it dangerous, and with not having put up proper, or appropriate, or sufficient barriers, or warning signs, to the traveling public of such dangerous situation. The court instructed that if the jury found for the plaintiff under that group of allegations judgment should be against both defendants. Question No. 1 put to the jury, and its answer, are as follows:

"If your verdict is in favor of the plaintiff, then state what act or acts of negligence you find the defendants guilty of which caused the accident. A. Failed to put up proper closed-road signs."

Appellants argue this answer as though it applied to the first group only of allegations of negligence referred to, and argue that neither the plaintiff nor the driver of the car in which he was riding saw even the intersection which they passed about seventy-five feet west of the place of the casualty, and that if they didn't see the intersection they wouldn't have seen the signs if they had been there. Without analyzing that argument, it cannot be said that the answer limited it to the first group of allegations of negligence. Signs would have been proper under the second group of such allegations. The fact that the jury rendered the verdict against both defendants indicates they so regarded it. The question was for the act of negligence "which caused the accident," and the answer was the failure to put up "proper closed-road signs." The answer is susceptible, at least, of meaning appropriate signs for the dangerous excavation which defendants had made in the highway. No one contends that the intersection warnings, detour signs, etc., had been put up, as required by statute. The court instructed the jury it was admitted they had not been put up. The case was not defended on the theory they had been put up. It was defended on the theory that what had been done was sufficient and appropriate under the second group of allegations of negligence. It seems reasonably clear that was what the jury was referring to in their answer.

Appellants argue that a new trial should have been granted because of misconduct of the jury. There was some conflict between the witnesses as to whether any of the dirt from the excavation for the culvert had been thrown out on the west side of the excavated ditch. All the witnesses who testified on that point agreed that there was a large pile of dirt from the ditch which had been thrown out on the east side. Some of the witnesses did not remember seeing that any of the dirt had been thrown on the west side of the ditch, but some of the witnesses for both plaintiff and defendants testified to seeing dirt which had been thrown from the ditch on the west side of the excavation, particularly near the center of the highway. On the hearing of the motion for a new trial it was shown by one of the jurors, called as a witness, that while the jury was conducting its deliberations one of them who had worked for contractors said it was the rule or custom of contractors for the dirt to be thrown on one side of the ditch where it was dug like this one so they could have their cement mixer on the other side; that that had been his experience in working for contractors. His testimony did not disclose that he pretended to know anything about this particular ditch, or that he made the statement as bearing on this particular excavation. More than that, the question of whether there was a part of the dirt from the ditch on the west side of it was of no particular importance in the case. We do not regard the statement as constituting such misconduct that it requires a new trial. It is also shown that in answering question No. 11 the jury had taken into consideration the fact that the plaintiff was seated behind the driver and could not see the brush or road ahead of him without craning his neck to look around. This is argued as misconduct. How the jury considered the evidence before them was not a proper matter of inquiry. The statement or testimony of the jury concerning it was of no importance. The question is whether their answers are supported by evidence. We will have occasion to discuss this later.

Appellants argue that plaintiff's counsel were guilty of such misconduct as required the granting of a new trial by injecting the question of insurance in the case. In examining the jurors on their *voir dire* counsel asked each of them if he was connected, as stockholder or otherwise, with any insurance company that has for one of its purposes the insuring of public work contractors against damages which third persons may sustain, or if he held a policy in any

such company, or if he had been employed as agent, or otherwise, for such a company. Questions of this character may be propounded to jurors on their *voir dire* if they are asked in good faith. Ordinarily the trial court is the judge of whether they are so asked. (*Swift v. Platte,* 68 Kan. 10, 74 Pac. 635; *Howard v. Motor Co.,* 106 Kan. 775, 190 Pac. 11; *Peters v. Cavanah,* 132 Kan. 244, 295 Pac. 693.) The fact that the trial court overruled objections to these questions indicates that it regarded them ,as being asked in good faith.

A witness for defendants, Lester Clark, had testified that he had no pecuniary interest in the case. He was asked, on cross-examination, if he had not received something in the case. After some reluctance he said he had received something. In answer to other questions he stated that he had received $10 by check, sent through the mail, which he had cashed; that he did not know who it was from, or remember the name on the check. He was asked if he did not tell a named person that both he and another fellow "got $10 apiece out of this from an insurance company." He answered that question in the negative. He stated he had claimed his fees, $4.50, for appearing as a witness at the former trial of the case, but that money had not been paid to him, and his claim for fees had not been assigned to anyone. It developed another witness for defendants had received a check for $6.50. He did not remember who signed it, but it came from Wichita. Appellants complain of this as being misconduct of plaintiff's counsel. We do not so regard it. The only question propounded to the witness tending to develop that the payments had been made by an insurance company was denied by him. The fact that some one, not a party to the action, is paying witnesses, or others, in connection with it, is a proper subject for inquiry. It may constitute maintenance. (11 C. J. 232.)

A Doctor Finney was called as a witness for defendants. It developed from his testimony that soon after the plaintiff was taken home from the casualty, at a time when plaintiff was seriously injured, the doctor called at plaintiff's house to make a physical examination. It developed he had not been called by the plaintiff, or any member of his family. Part of his cross-examination is as follows:

"Q. Were you called out by Doctor Billings to make this first examination? A. No.

"Q. By whom were you sent? A. Dulaney, Johnston, Yankey & Priest.
"Q. Who are they? A. Insurance company of Wichita.
"Q. Where was that examination made? A. At his house. . . .
"Q. Did he know you were coming? A. I don't know whether he did or not.
"Q. Had you visited him in the past? A. No."

At the conclusion of his testimony defendants moved "to strike out the questions and answers of this witness in regard to who called him to attend him, as prejudicial." This was overruled, as was also defendants' motion to discharge the jury because of prejudicial conduct of counsel. Appellants complain of this cross-examination as injecting the question of insurance into the case. The circumstances of a physician calling to make an examination of a sick or injured man, without having been called by him or any member of his family, is in and of itself so unusual, if indeed not so unprofessional, as to be a proper subject of inquiry as to how he happened to go there for that purpose. It will be observed that there was no objection to any of these questions propounded to this witness. The witness himself is the one who placed in the record the fact that an insurance company at Wichita had sent him. Had it been especially desired to keep that fact out of the record he might have said that the defendants, or some one representing them, had sent him. If it be true that an insurance company was really defending this action, that it had its physician intrude himself into the sick room of plaintiff, it is not in position to complain when the physician whom it has so employed injects into the record the fact that he was appearing for an insurance company. To so hold would permit anyone representing an insurance company who had anything to do with the case, and who was called as a witness, to say that he was representing an insurance company, and thereby force a new trial.

Appellants cite *Van Pelt v. Richards Paint & Paper Co.*, 132 Kan. 581, 296 Pac. 737, and argue that that case is similar to this with respect to the insurance feature. We think there is quite a distinction. There, unquestionably, there was persistent effort to inject the question into the case, and when a physician was asked who sent him, counsel was not frank with the court in stating that he did not know what the answer of the physician would be. That was clearly shown on the hearing of the motion for a new trial. There is no such showing here. The complaint of misconduct of plaintiff's counsel is not well taken.

Defendants moved the court below to set aside answers returned by the jury to certain special questions for the reason that they were not supported by the evidence. The court sustained the motion as to questions Nos. 5, 9 and 11, hereinbefore printed. Appellants now contend that the court having set aside those questions for the reason they were not supported by the evidence, it was imperative that the court grant a new trial. Questions Nos. 5 and 11 asked the jury to state at what distance west of the ditch plaintiff could have seen the brush and the light of the lantern if he "had been watching the road ahead." It is possible, as argued by appellants, that the jury made the answers they did on the theory he could not, without inconvenience to himself, see the road ahead of him because of the driver in front. That view, however, disregards the questions which presuppose that he was looking ahead. However, plaintiff's evidence was that he was not looking ahead at the immediate time the car was approaching the brush, but that he was occupied by changing his position in the car. The questions, therefore, were purely hypothetical in that they did not relate or pertain to a situation disclosed by the evidence. Question No. 9 was not personal to plaintiff, but related to "those riding in the automobile." Perhaps, in its final analysis, it referred more particularly to the driver, whose special duty it was to observe the road. The court in its instructions had distinguished between the duties of the driver and of a guest in the rear seat with respect to the observation of the road ahead, and had specifically told the jury that negligence of the driver of the car was not imputed to the guest, that the test with respect to the guest was whether he used due care as to his own safety. There appears to have been no complaint of any of the instructions of the court on the motion for a new trial, and none is made in this court. It has been properly held that when special findings, material to a general verdict, are set aside by the trial court for the reason that they are contrary to the evidence, a new trial should be granted (*Railway Co. v. Davis,* 64 Kan. 127, 67 Pac. 441; *Brice-Nash v. Street Railway Co.,* 102 Kan. 36, 169 Pac. 189); but from what has been said concerning these questions they were not in fact material, they might very well have been omitted altogether, and the setting of them aside did not require the granting of a new trial. Ordinarily special questions which are not material to a decision of the case should not be sub-

mitted to the jury. (*Loveless v. Ott*, 121 Kan. 728, 736, 250 Pac. 324.)

Defendants complain of the refusal of the court to submit to the jury the following question requested by them:

"Q. At what distance west of the ditch in question could the light of the lantern be seen at the time of the accident by one traveling east on the highway?"

From the evidence contained in the abstract and a plat furnished us it is clear that some persons approaching the ditch from the west might see the light of the lantern earlier than others, depending upon the position in the highway, the height above it, or the thickness of the foliage on the brush. The brush was piled about the center of the highway twenty-four feet west of the excavated ditch. The smallest dimensions given to it by any witness are that it was six feet long north and south, two feet high, and about two feet thick. Other witnesses for the plaintiff estimated it as being seven or eight feet long and from three to three and one-half or four feet high. Witnesses for defendants estimated it as being larger than that, one of them placing its length at twenty-four feet. The lantern was near the center of the highway, about half-way between the ditch and the pile of brush, which would make it about twelve feet east of the brush. It was an ordinary farm lantern. There is testimony that the globe was badly smoked at the time of the casualty. It had been placed on a mound of dirt seven or eight inches high, the light of the lantern being about three or four inches higher than the bottom of the lantern. This would make the light of the lantern about eleven or twelve inches from the ground. We are told that the highway approaching this brush from the west was practically level—slightly upgrade. If the pile of brush were only two feet high the light of the lantern was a foot below the top of the pile. If the brush were three or four feet high the light was two or three feet below the top of the brush. It would seem difficult, therefore, if not impossible, for one approaching from the west to see the light of the lantern over the pile of brush. The defendant Nelson testified that he gave his workmen instructions to place the lantern so it could be seen through the brush. Naturally, whether the lantern could be seen through the brush would depend upon the density of the foliage, which, of course, might be more dense at some places than others. All the testimony on the point showed that the

brush consisted of limbs cut from green trees, with the green leaves or foliage on them. It is true a witness for plaintiff who drove along this highway about three o'clock in the morning saw the brush and the lantern as he approached them. He was driving a car with a high seat. Whether he saw the lantern over the pile of brush, or through the brush, or whether he was driving near enough to one side of the highway that he could see the lantern around one end of the pile of brush, is not disclosed by the abstract. Several witnesses who testified for defendants testified to having seen the lantern as they approached from the west, and particularly from the intersection where they turned south, at seventy-five feet west of the excavation. The plat furnished us showing the course of the car in which plaintiff was riding, together with the location of the lantern and the pile of brush, shows that the car approached from the west a little to the right of the center of the highway, and that the pile of brush was directly between the car and the lantern. It was the theory of plaintiff that the brush hid the lantern from the occupants of the car in which he was riding. Each of the occupants in the car testified that he did not see the light of the lantern until the car turned to go around the brush. Defendants scout this testimony as being false. The physical facts would demonstrate that it is not necessarily so. Certainly, if the pile of brush was as big as the testimony of defendants' witnesses tended to show, it is difficult to see how anyone could have seen the light of the lantern as he approached. Even if it were as small as plaintiff's witnesses estimated, it is possible the light of the lantern was hidden by the brush from the occupants of this car as it approached. The placing of a light in that position was something like placing it under a bushel. (Matt. 5:15.) It was not error for the court to refuse to submit this question, especially in view of the questions which were submitted.

Defendants moved to set aside the answer to question No. 1 as being contrary to the evidence. The court overruled the motion. By their answer to this question the jury found that the negligence of defendants which caused the accident was the failure to put up proper closed-road signs. Defendants had ignored the statutory requirement as to signs and had undertaken to do something else. They had excavated a dangerous ditch, entirely across a much-traveled state highway. The only thing in the nature of a warning sign which they put up was to pile some brush in the road and to

place an ordinary farm lantern in such a position that it was screened, if not hidden, by the brush. A pile of brush in the road did not necessarily indicate that there was a pitfall, amounting to a death trap, only twenty-four feet beyond it. Indeed, in and of itself it did not necessarily indicate any obstruction other than the brush. Ordinarily a red light is a sign of danger. Defendant Nelson had gone to Rosalia and tried to find a red lantern to put out on this road, but being unable to do so had used a common farm lantern. Defendants argue that the car was going at a terrific rate of speed, that tracks of the car showed that the brakes had been applied and the car slid for as much as ninety feet. It is true that defendant Nelson testified that he had examined the tracks of the car and found it had slid that distance, but his examination was made sometime the next day after a number of cars had been over the place, and there is evidence of several witnesses who examined the tracks immediately after the casualty that the wheels slid from a point about even with the brush to the ditch—a distance of about twenty-four feet. The jury was at liberty to believe this evidence, and perhaps it was more persuasive. The jury found the car was traveling from thirty to thirty-five miles an hour before the brakes were applied. If it had continued at that rate of speed it would have passed over the distance from the brush to the ditch in less than a second. No doubt the speed was retarded by the application of the brakes, but even so, the time was short.

Defendants moved to set aside that portion of the answer to question No. 6 after the word "yes" as not being responsive to the question. The motion should have been sustained. It was not responsive, and was surplusage. (*Hall v. Kansas City*, 112 Kan. 752, 212 Pac. 875.) Defendants moved to set aside the answers to special questions 12 and 13 as being contrary to the evidence, and the court overruled the motion. There was no error in this ruling.

The fact that the jury added surplusage to the answer to question No. 6, and their answers to questions 5 and 11 obviously did not take into consideration the fact that the question was predicated on what could have been seen had plaintiff "been watching the road ahead," disclosed either that the jury did not fully comprehend these questions or was not altogether frank in the answers given. The latter view might indicate an unfairness on the part of the jury which would require, or at least justify, the granting

of a new trial. Obviously the court did not take that view of the conduct of the jury. Its judgment in overruling a motion for a new trial is tantamount to an adjudication that the trial court absolved the jury from any charge of insincerity or unfairness that might inhere in these answers. We have heretofore seen that questions 5 and 11 were not material in view of the testimony, and it has been previously held that the way to treat surplusage in a verdict is to disregard it. (*Hall v. Kansas City*, supra.) The same rule should apply to surplusage in the answers to special questions.

We find no material error in the record, and the judgment of the court below is affirmed.

BURCH, J., not participating.