No. 30,907.

MAGGIE ATKINSON, by Ralph R. Atkinson, her Next Friend, *Appellee,*
v. THE WICHITA GAS COMPANY, *Appellant.*

(18 P. 2d 127.)

Opinion filed January 28, 1933.

*A. M. Ebright, P. K. Smith,* both of Wichita, and *Robert D. Garver,* of Kansas City, Mo., for the appellant.

*George McGill, H. C. Castor, Victor J. Rogers, J. Harold Jorgensen* and *A. M. Buzzi,* all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Maggie Atkinson brought this action against the Wichita Gas Company for injuries sustained by her in a gas explosion alleged to have been caused through the negligence of the defendant. She recovered $7,500 as damages. Defendant appeals and assigns as error the *voir dire* examination of the jury; that the evidence shows that her injuries and present condition were not due to the explosion, and fails to show negligence on the part of the defendant; that the court was not warranted in allowing, after the trial was begun, the substitution of her son in the action as her next friend because of the claim that she was insane and incompetent to prosecute the action; that there was error in the instructions and in overruling defendant's motion for a new trial; and that the verdict was excessive.

The plaintiff, a widow about forty-seven years of age, had rented a house in Wichita, for a home, from the owner, J. E. West. The owner had advertised the property for rent and had been told by parties who inspected it with a view of renting that a strong odor of gas prevailed and there must be a leak. West called the gas company and reported the leak. He inquired of the gas company if it was necessary for him to get a plumber to discover the leak, or did the company attend to such matters, and was told that the gas department of the company would take care of that for him; that about ten days later the owner's attention was again called to the fact that gas odor still persisted, and he again called the gas company about the matter and was told that the gas company had looked after it, but that it would make another test, and still later he told the gas company that gas was still leaking. An employee of the company stated that he found a slight leak near the meter on October 8, 1930, and had repaired it. The gas was then turned off for a short time, but when the plaintiff rented the house on November 28, 1930, she, through her son, applied for gas service and it was turned on. A day later the explosion occurred, from which it is claimed serious injury resulted to the plaintiff. Afterwards employees found that the leaks were in the service line running from the street to the house under a concrete driveway. The jury returned a verdict in favor of the plaintiff and, after a motion for a new trial, judgment in favor of the plaintiff for $7,500 was entered.

On the *voir dire* examination of persons called to sit as jurors,

appellee asked the question: "Are you the owner of any stock in The Cities Service Company, The Cities Service Gas Company, The Wichita Gas Company or Henry L. Doherty & Company?" Over objections of defendant, the court permitted the questions to be asked of proposed jurors, and it is claimed that in bringing the matter of other gas companies to the attention of the jury necessarily operated to the prejudice of the defendant. The relationship of the gas companies to each other, a fact quite generally known, furnished a good reason to inquire of jurors whether they owned stock in the gas companies. If they had answered that they did own stock in the companies mentioned or in other gas companies, there would have been some reason for excusing them from the jury. The questions appear to have been asked in good faith, and such questions may be propounded if they are in fact asked in good faith. (*Billings v. Aldridge,* 133 Kan. 769, 776, 3 P. 2d 639.) When the objection was made, counsel for plaintiff stated his reason for the inquiry—the jury for the time being was excused—and he said:

"My reason for asking the jurors the question is that the Gas Service Company is a corporation which owns, through stock ownership, a large number of public utilities in Kansas, including the Wichita Gas Company. The capital stock of the Gas Service Company is owned by The Cities Service Company, a corporation, a holding company; that the capital stock of the Cities Service Gas Company, a corporation, is owned by the Empire Gas & Fuel Company, a corporation; that the stock of the Empire Gas & Fuel Company is owned by the Cities Service Company; that Henry L. Doherty, doing business as Henry L. Doherty & Company, dominates, manages and controls all of these companies; and for the further reason that there has been sold in this community large quantities of stock of the Cities Service Company in particular, . . ."

It is plain that there was no error of the court in permitting the inquiry.

One contention of the defendant is that the evidence does not sustain the finding of negligence on its part, and does not show that the explosion was the proximate cause of the physical and mental suffering and infirmities of plaintiff. It appears that the explosion occurred within a few hours after the plaintiff occupied the house, the minor son of plaintiff having previously applied to the defendant for the turning on of the gas. Plaintiff was near the center of the house when the explosion occurred and it was of such force as to throw her violently to the floor, causing, it is alleged, painful injuries to the muscles, nerves, ligaments of the back, shoulder, arms and

head, producing nervous prostration, spinal irritations, phychoneurosis tremor of the left arm, loss of weight, and indigestion, which rendered her unable to perform her ordinary duties or to conduct any business affairs. The leak of the gas which caused the explosion appears to have been from the service pipe leading from the curb of the street up to the house, and defendant calls attention to the fact that the owner of the house and not the defendant owned the service pipe, and the claim is that it was not the duty of the gas company to maintain the pipe and it should not be held responsible for defects in it. As we have seen, notice was given to the gas company that gas was escaping on the premises, and the employee of the company in charge was asked by the owner if he should get a plumber to make the test or if it was the duty of the gas company to attend to the matter. The reply was that the company would take care of it, and that appears to be the practice of the company—to inspect and make tests of the service pipes regardless of ownership. It appears that the gas company agreed to make the inspection and remedy any defects found. It not only undertook the task, but it made a test of some kind and found a slight defect in the meter, which it repaired. It failed, however, to discover the leak which impregnated the house and premises about it. A second notice that the gas odor prevailed about the premises brought the reply that the matter had been taken care of; and although the real defect was not found prior to the explosion there appears to have been no difficulty in finding it after the explosion, and it is plain that if reasonable care had been exercised when notice was given, the defect would have been disclosed and the explosion avoided. The handling of gas required prompt action on the part of the gas company, and it devolved upon that company to exercise reasonable care to discover the source of the leak as soon as it received notice that gas was escaping, whether the leak was in the main or service pipes. In a case where notice had been given of such a condition it has been said that—

"It is immaterial in such case that the pipe where the leak occurred was owned by the consumer." (28 C. J. 594.)

In *Memphis Consol. Gas & Electric Co. v. Creighton*, 183 Fed. 552, it was held:

"A gas company, which through its pipe supplies gas to a house and has control of the apparatus for cutting it off, when notified that gas is escaping in the house and informed of injury and danger to the inmates therefrom, owes a duty to the occupants of the house to exercise reasonable diligence in

shutting off the gas therefrom, and it is immaterial that the pipes where the leak occurred were owned by the owner of the house." (Syl. ¶ 1.)

See, also, *Anderson v. Standard Gaslight Co.*, 40 N. Y. Supp. 671; *Ottersbach v. Philadelphia*, 161 Pa. St. 111; *Staff v. Montana Petroleum Co.*, 88 Mont. 145; *Consolidated Gas Co. v. Connor*, 114 Md. 140; *Nonnamaker v. Kay County Gas Co.*, 123 Okla. 274.

There is a further contention that plaintiff's physical and mental condition was not caused by the explosion but is the result of natural stage of life in no way related to the explosion. On that question there is marked conflict of evidence. There was testimony presented in behalf of plaintiff that she was in good condition prior to the explosion. A son, who was in the house when the explosion occurred, testified that the mother was in perfect physical health, fully able to perform her work and did it well, but that afterwards she was highly nervous, could not remember, but sits and stares and is in fact a blank. Another son testified that before the explosion plaintiff was in good health, able to carry on the business, tend to the domestic work and did it well, but that subsequent to the explosion she was terribly shaken up—indicated that her left hand was injured. A neighbor woman to whose house plaintiff was taken testified that after the explosion plaintiff was dazed, benumbed, could hardly get around, was begrimed and covered with dust and was in a frightful condition; that she could not get her arms up to her head and could not wash her face. She stayed in that house until the next day and, although she had previously been in good health, was quite different both physically and mentally after the injury. Another neighbor woman who saw her immediately after the accident said that she appeared to have no memory, could not tell the names even of her children and did not know what she was doing. A doctor who had been her family physician testified that previously she had been in good physical condition but later was very nervous and did not appear mentally normal. Another doctor who specialized in nervous and mental diseases and shell shock testified that an examination of the plaintiff disclosed that she was under profound depression, sits in a fixed staring gaze, that there was an obvious difference in the two sides of her body, the left leg is affected and dragging a little in locomotion. At the first examination the plaintiff did not show any mental disorder, did not show anything like insanity, but that a later one disclosed that she had delusions and hallucinations, and that she was suffering from

what we term traumatic psychosis, and he further stated that` in his opinion the injury inflicted at the time of the explosion might bring on the present condition of the plaintiff.

The witness further stated that plaintiff's present condition was not caused from her present age of life, that she was not going through the change that usually occurs at the age of forty-six. Evidence contradictory to that offered in behalf of the plaintiff was produced by the defendant, some of it to the effect that she had been very nervous before the explosion and had admitted it to witnesses and to others. A medical witness expressed the opinion that her condition at the time of the examination was not due to the injury and shock after the explosion. Some of the defendant's witnesses admitted that an explosion of such force as to throw her to the floor and leave her dazed and unable to lift her hands to her face, unable to give the names of her family or whether her husband was still living or dead, might cause the condition in which plaintiff was found. So far as the evidence of the defendant conflicted with that of the plaintiff, it may be said that both have been tested for credence of the witnesses, and the weight and force of the evidence they have given, and the jury have chosen to rely on that of the plaintiff. It is the trier of the facts, and it is clear that the evidence of plaintiff is abundantly sufficient to support the general verdict, and the finding of the jury in the general verdict is binding on this court.

Another objection is that the court permitted the substitution for plaintiff of a next friend after the trial was in progress and most of plaintiff's evidence had been received. In the course of the trial a question of the competency of the plaintiff to prosecute the action arose. When permission for the substitution was asked, counsel for plaintiff stated to the court:

"I have come into possession of certain facts I did not have at the outset of this trial, and I fear that the plaintiff does not have sufficient mental capacity at this time to prosecute this action, and for that reason I am asking permission to substitute the son, Ralph R. Atkinson, as her next friend, to proceed with this action."

It appears that the motion was made in the absence of the jury, and when made the court reserved its ruling until all of the medical testimony had been produced and then concluded the substitution should be made and granted the motion. We think that no prejudice could have resulted from the substitution. There was no evi-

dence given showing that counsel knew of plaintiff's incapacity when the suit was begun on August 25, 1931, and when the trial came on March 21, 1932. The testimony tended to show that the condition of plaintiff resulting from the injury was neuropsychosis and that it was progressive in character. The full effect of the injury may not have been disclosed when the action was begun and in the intervening months the injury may have developed to indicate incompetency or inability to properly prosecute the action. A next friend may prosecute an action for one of weak mind where the person has not been adjudged insane by a court of competent jurisdiction and no guardian has been appointed. The issue in the case remained the same as before the order was made. The situation of the defendant had not changed, and we think no good purpose would have been subserved to begin the case over again, amend pleadings, procure a new service and repeat the testimony already produced. No continuance was asked and no prejudice, we think, was sustained by defendant. Only prejudicial error is ground for reversal. We conclude that there was no abuse of discretion by the court in allowing the next friend to continue the prosecution for the protection of a valuable interest in the plaintiff.

The claimed exemption from liability by reason of the fact that the minor son of plaintiff had signed an application to defendant for the turning on of the gas at the house, and that in the blank signed there was a clause saying that the pipes were suitable for receiving gas, is without merit.

There is a contention that the court should have granted a motion for a new trial on the ground of newly discovered evidence which defendant was unable to produce at the trial. The affidavit supporting the motion recites that two witnesses living in distant places had known plaintiff prior to the explosion and would testify that she was "a tall, thin woman with a scared expression and appeared to be a mental case." In view of the evidence, the new evidence is seen to be of little importance and, besides, it is clearly cumulative in character. Much testimony along the line of the proposed new evidence was produced by both plaintiff and defendant. It was cumulative and aimed to impeach or discredit that given in behalf of plaintiff. Defendant had had about seven months to prepare for trial after the institution of the action, and no good reason is shown why the defendant had not obtained the additional

evidence. There was no error in overruling the motion upon that ground. (*Bazzell v. Atchison, T. & S. F. Rly. Co.*, 133 Kan. 483, 300 Pac. 1108, and cases there cited.)

Another ground for which a new trial was asked was a statement by counsel for plaintiff in his argument to the jury. He stated to the jury that:

"If it returned a verdict for the defendant, the officers and managers of the defendant company would return to their office and buy themselves big cigars and the plaintiff would be compelled to sit on a chair at the corner of Main and Douglas, with a tin cup and sell shoestrings the rest of her life."

This was an extravagant prophesy or illustration and not within the bounds of pertinent argument, but we cannot hold that it prejudicially affected the verdict.

Some criticisms are made of the instructions of the court. These have been examined and we do not see any material fault in them or anything requiring discussion of the objections. It appears that the charge fairly presented the case to the jury.

That the verdict is excessive is suggested but not seriously pressed. Indeed, it cannot be well contended for if the injury is of the character found by the jury and sanctioned by the trial court.

We find no material error in the record and it follows that the judgment is affirmed.

THIELE, J., not participating.