No. 32,146

F. D. Forsyth, *Appellee*, v. Dr. H. L. Church, *Appellant*.

(42 P. 2d 975)

Opinion filed April 6, 1935.

*A. B. Keller, George R. Malcolm* and *C. A. Burnett*, all of Pittsburg, for the appellant.

*A. H. Carl*, of Pittsburg, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: This was an action brought by F. D. Forsyth, who was a passenger in the taxicab of Oscar Owens, and who was injured in a collision with a vehicle driven by Dr. H. L. Church on the streets of Pittsburg. Plaintiff alleged that Doctor Church was carelessly and negligently driving his machine at a dangerous rate of speed and failed to keep a lookout for traffic. Defendant alleged in his answer a general denial and that the taxicab was driven with negligence which contributed to the injury, if any was sustained by plaintiff and for which he sues. The jury returned a verdict awarding plaintiff $3,500 against the defendant, and he appeals.

Considerable testimony was offered. The collision, it appears, occurred at the intersection of Broadway, running north and south through the city, and Williams street running east and west, and

ending at the intersection. The taxicab was traveling north on Broadway with Forsyth and Mary Smith as passengers. Mary Smith was in the front seat with Oscar Owens, the driver, and Forsyth was in the back seat. Owens testified that he didn't see Church's car until he was struck by it, and that there was no light on the defendant's car.

The jury found that defendant's act causing the collision was driving without lights. Defendant's testimony was that he had lights on his car and that the lights were on after the collision. There was some testimony that the doctor's coat sleeves were stiff and that he may have turned the light off and on again, and much was made of this testimony. It was further found that he was driving at a speed of about thirty miles per hour, but this was not found to be excessive nor negligent. The plaintiff saw the defendant's car when it was thirty or forty feet away and did not warn the driver of the approaching car. This was claimed to be contributory negligence.

In presenting the case to the jury a deposition of the plaintiff was read, in which the witness was asked to state what he heard Doctor Church say at the time of the collision, and he said he heard Doctor Church say "to take the car down to the garage, my insurance will take care of it." Motion was made to strike the answer out, but it was overruled, and counsel for plaintiff was insistent on the question of insurance, and when another witness was testifying he asked him what was said by the defendant at the time of the collision, and he replied that he heard a conversation between Doctor Church and Oscar Owens, and the court then appeared to understand and appreciate the objectionable character of the evidence and ruled that it was objectionable and that the jury should not consider it.

When Mary Smith, a witness, was asked about the statement of Doctor Church, she said, "I heard the doctor say, 'Take the car down to the garage, my insurance will take care of it.'" Motion to strike out and disregard the testimony was overruled, and it was admitted. Owens gave like testimony over objections, which was likewise admitted, thus admitting the force of the objection and having ruled it out on account of being prejudicial and objectionable, it was admitted and became a prominent factor in the case. This has been determined to be reversible error, and, like in the case of *Van Pelt v. Richards Paint & Paper Co.*, 132 Kan. 581, 296 Pac. 737, the

court first struck it out and afterwards admitted it in the testimony of several witnesses. Other cases which made such testimony a ground of reversal are *Holloway v. Telfer,* 136 Kan. 80, 12 P. 2d 826; *Coffman v. Shearer,* 140 Kan. 176, 34 P. 2d 97, and a number of cases in other jurisdictions. These authorities require a reversal of the judgment.

There is an instruction that is claimed to be erroneous. Instruction twenty-three, said to be in error, is as follows:

"You are instructed that the evidence of the physicians and all other testimony is entirely for you, and the court will not say, as a matter of law, that they are not entitled to any greater weight, you may find it is entitled to no greater weight than any other evidence, or you may find that it is of greater weight. It is a question of fact for you to determine, and the jury has a right to disregard such evidence entirely, and you have a right to regard it."

The court had previously submitted that the verdict should be determined by the testimony, and then in the later instruction advised the jury that they might disregard the testimony of expert physicians entirely. While the jury might under some circumstances reject expert testimony absolutely, depending upon the circumstances, and give it no consideration for one reason and another, but to disregard it entirely is different. In Webster's New International Dictionary, the word "disregard" is defined as follows: "Not to regard; to pay no heed to; to fail to notice or observe; hence to slight as unworthy of regard or notice, as to disregard the admonition of conscience." The advice that they might disregard it entirely therefore is an overstatement. If doctors well schooled and of integrity give an opinion with the scope of their studies and experience, should it be disregarded by a jury? We hold not.

There was a conflict between the regular M. D.'s of the clinic of Pittsburg and the chiropractors as to the injury of plaintiff, and the jury may have shut out of consideration entirely the testimony of the regular physicians when it should have considered it with care. In *A. T. & S. F. Rld. Co. v. Thul,* 32 Kan. 255, 4 Pac. 352, the following instruction was given, but it was held to be erroneous:

"There has been some evidence in the case, known as 'expert testimony.' In respect to such testimony I instruct you that its value depends upon the learning and skill of the expert witness, and on the nature of the subject of investigation. The value of such testimony varies with the circumstances of each case, and of these circumstances the jury must be the judges; and you must determine whether great or little weight is to be accorded to it. But in

all cases such testimony should be received and weighed with caution." (p. 259. See *Courtright v. Cavert,* 125 Kan. 66, 262 Pac. 587.)

In Lawson on Expert and Opinion Evidence, p. 282, he makes the following statement:

"The testimony of experts is entitled to the same credit, is to be tested by the same rules as are applied to the evidence of other witnesses, and should have weight with the jury according to their opportunities and qualifications; but it is not conclusive."

The court remarked that this is a correct expression of the rule of expert testimony.

Another ground of error was the closing argument of counsel for appellee. He took a wide range, called witnesses liars, stating facts not in evidence, ridiculed witnesses, especially the regular physicians, and gave reasons why certain witnesses were not present to testify; that the witnesses belonged to the "damnable association," the Pittsburg clinic. Facts not in evidence were stated; he said that he had more respect for the chiropractors' testimony than he had "for some of the M. D.'s who are, I think, one of the most highly organized robbing gangs in the United States of America, and all belong to the famous American Medical Association—if you doubt it try to get one of them to testify against another doctor."

These inflammatory appeals are not in keeping with the decorum that counsel should observe in a court that is settling the rights of parties, and it is condemned as erroneous. The court should exercise its authority and right uninfluenced by the appeals of counsel to passion and prejudice.

The judgment is reversed, and the cause remanded for a new trial.