No. 34,333

VIVIEN WITT, by Her Father and Next Friend, J. C. WITT, *Appellee,*
v. E. E. ROPER, as THE ROPER PETROLEUM COMPANY, and HOMER
W. HANNA, *Appellants.*

(96 P. 2d 643)

Opinion
filed December 9, 1939.

*W. W. Brown,* of Parsons, for the appellants.

*Elmer W. Columbia,* of Parsons, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: The action arose out of a highway collision between defendants' truck and an automobile in which plaintiff rode between her sister and a third person in the front seat. The details of the collision are fully narrated in the companion case brought by plaintiff's sister, reported in *Witt v. Roper,* 149 Kan. 184, 86 P. 2d 549.

In the present case liability was confessed. The only issue involved was the extent of plaintiff's injuries and the consequent amount of damages to which plaintiff was entitled.

The jury returned a general verdict for $2,750 and answered special questions thus:

"1. What amount do you include in your verdict for plaintiff, if any, for shock to the nervous system? A. $750.

"2. What amount do you include in your verdict for plaintiff, if any, for permanent scars on her face? A. $1,500.

"3. What amount do you include in your verdict for plaintiff, if any, for pain and suffering? A. $500."

Judgment was rendered accordingly, and defendants assign two errors for appellate review: (1) improper and persistent effort of plaintiff's counsel to lead the jury to infer that defendants carried liability insurance, and (2) excessive verdict.

It may be advisable to consider the significance of these complaints together, but in examining them separately we note that at the threshold of this lawsuit the first juror called was a Labette county farmer, and on his *voir dire* the first question propounded to him was—

"Q. Have you ever been, or are you now, a stockholder in any insurance company that has for its principal business the issuance of insurance policies to protect its policyholders from liability in accidents on the road? A. No. None whatever.

.    .    .    .    .    .    .    .    .    .    .

"Q. So far as you know, has any member of your family occupied such a position? A. No, sir.

"Q. Have you ever been an agent of any insurance company?

"[Counsel for defendants]: . . . Objection.

"By the Court: Objection sustained. Don't follow that any further, . . ."

On the examination of the second juror, another farmer, the record reads:

"Q. Are you at this time, Mr. Hittle, or have you ever in the past been a stockholder or otherwise financially interested in any insurance company that has for one of its performances the issuance of insurance policies to protect its policyholders against accidents occurring on the road? A. No.

"[Counsel for defendant]: The defendant objects to this. It doesn't seem to be proper examination.

"By the Court: It won't be necessary to ask each juror. Ask the general question to the jury and then drop the matter."

.    .    .    .    .    .    .    .    .    .    .

On the *voir dire* of another juror who was engaged in the real-estate and insurance business, counsel for plaintiff propounded this question:

"Q. Mr. Walker, if it should develop in the trial of this case that Vivien Witt was returning home from school, returning to her father's farm home from school riding with her sister, on this paved road east of Parsons about October 18, 1938, and the truck driven by this Homer Hanna, alleged to have been driving at a high rate of speed, left his line of traffic and ran into the car in which these girls were riding, and breaking all the glass out of the Witt

car and injuring Vivien about the body, and she fainted in a short time, and leaving a permanent scar across her forehead, is there anything in your experience, if such a situation as that was shown, that would prevent you or embarrass you in returning a substantial verdict in this case? A. No.

"Q. If, under the evidence the automobile which is being . . .

"[Counsel for defendants]: The defendant objects to this method of examination, on the ground that it is prejudicial and improper.

"By the Court: Yes. Don't go too much into the details."

In the course of the trial Dr. John D. Pace, called as a witness for defendants, gave testimony touching the extent of plaintiff's injuries, and at the inception of his cross-examination the record reads:

"[Counsel for plaintiff]: Q. Doctor, who did you report to, to make this examination of the plaintiff? A. The insurance company.

"Q. You made your examination and were paid by whom?

"[Counsel for defendant]: Object to that on the grounds it is incompetent, irrelevant and immaterial, and not proper ethics.

"By the Court: Objection sustained.

"Q. I will ask you, doctor, if you were paid, and if so, how much you were paid for making this examination on behalf of the defendants in this case?

"[Counsel for defendant]: Object to that on the grounds it is incompetent, irrelevant and immaterial.

"By the Court: Objection sustained.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. At that time you were told, and made notations such as might be required of you for giving testimony in a lawsuit, if any lawsuit should ever come up; is that right? A. No, sir.

"[Counsel for defendants]: Object to that on the grounds it is incompetent, irrelevant and immaterial.

"By the Court: Objection sustained.

"Q. You are—. I will ask you, doctor, if you weren't paid as an expert witness by the defendant to come down here today and give your testimony? ·

"[Counsel for defendants]: Object to that on the grounds that it is incompetent, irrelevant and immaterial.

"By the Court: Overruled.

"A. No, sir. I was just served by subpoena. I didn't know nothing about it until they called me up."

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Well, you made that in your report, didn't you? A. No; no, sir.

"Q. Will you read that part of the report which you rendered to the company—

"[Counsel for defendants]: Now, we object to that on the ground that it is incompetent, irrelevant and immaterial, and not ethical."

The abstract states that—

"At this point the court called plaintiff's attorney and defendants' attorney to his desk, and in a low voice . . . said [to counsel for plaintiff], 'I warn

you not to pursue the matter of insurance any further, and if you do, the court will declare a mistrial of the case.'"

On the motion for a new trial affidavits of three jurors were presented. These averred that the fact that defendant was protected by indemnity insurance was repeatedly mentioned by several of the jurors in the course of their deliberations.

It should go without saying that in a venire of Labette county farmers, a janitor, employees in local stores, and a common laborer, the possibility of any one of them being a stockholder in a liability insurance company or personally interested in its profits or losses so as to affect his impartiality as a juror was so remote that it is difficult for a reviewing court to accord to litigants the presumption of good faith in propounding questions which inevitably would plant in the jurors' minds the notion that there was a deep pocket behind that of defendants out of which any amount of damages awarded to plaintiff would eventually be paid, so that even-handed justice between the litigants actually before the court would not be of first importance. The impropriety of implanting in the minds of the jury the likelihood that any damages assessed in a highway collision case will eventually be paid by some insurance company and not by a defendant in a lawsuit has often been considered and usually condemned by this and other courts. (*Coffman v. Shearer,* 140 Kan. 176, 181-182, 34 P. 2d 97; *Pool v. Day,* 141 Kan. 195, 40 P. 2d 396; *Forsyth v. Church,* 141 Kan. 687, 42 P. 2d 975; "Anno—Informing Jury of Liability Insurance," 95 A. L. R. 388-417; id., 105 A. L. R. 1319-1338.) In *Cannon v. Brown,* 142 Kan. 700, 51 P. 2d 1007, we said:

"This court frowns on the practice of using one means or another to give the jury a hint that the defendant is covered by liability insurance, . . ." (p. 704.)

In *Coffman v. Shearer,* supra, which was an automobile collision damage suit, this court observed that the voluntary testimony of plaintiff's wife to the effect that defendant had told her he carried a large amount of liability insurance contributed materially to the "ruin of her husband's seemingly good case." With even more pertinancy would such an observation apply to the case at bar. Here defendants' liability was confessed. The only issue was the extent of plaintiff's injuries for which damages should be allowed.

And this leads to the question of the excessiveness of the verdict— never an easy question for an appellate court to decide. The

plaintiff, a school girl, suffered three or four small cuts on her face caused by flying glass from the broken windshield of the car in which she was riding between her sister and another person. She was taken to the hospital and two stitches were taken in one of the cuts, and perhaps some stitches were taken in the others, and the cuts were bandaged. She was in the hospital about two hours and the treatment took about a half an hour. She was absent from school the following day, but thereafter attended regularly and made excellent grades. There was testimony that her body showed several bruises; that the scars on her face would be permanent; that she had become nervous and inclined to jump up when meeting another automobile on the highway; that she did not sleep well and sometimes cried in the nighttime. There was also some testimony that she had pain in her back and in her arm and side which continued for several months, and that she had some difficulty in walking upstairs. The jury's verdict was for $2,750, and judgment was entered accordingly. A careful perusal of the record does not convince this court that plaintiff's injuries were serious. In comparison with the judgment in favor of her sister, which was for $1,800, for apparently much more serious injuries, this court might find it difficult to justify the amount of this judgment even if the matter of defendants having indemnity or liability insurance had not been unnecessarily and repeatedly injected into the case.

The liability of defendants being conceded, of course there should be a substantial judgment for plaintiff; and the court concludes that the best disposition to be made of the present appeal is to give plaintiff the option of a judgment for $1,250 or a new trial, and that the cause be remanded with instructions to that effect. It is so ordered.