No. 35,685

NANCY POWELL, *Appellee*, v. THE KANSAS YELLOW CAB COMPANY
and HORACE DUNCAN, *Appellants*. (FERD BANKS, *Defendant*.)

(131 P. 2d 686)

Opinion filed December 12, 1942.

*A. J. Herrod,* of Kansas City, argued the cause for the appellants.

*John E. Blake,* of Kansas City, argued the cause for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for damages for personal injuries sustained by plaintiff, a passenger in a taxicab which collided with an automobile operated by Ferd Banks at a street intersection.

Banks' demurrer to plaintiff's evidence was sustained. A jury answered special questions and returned a general verdict for $4,358 against the taxicab company. It has appealed.

The evidence—not free from controversy—may be summarized as follows: Argentine boulevard is an east-and-west street in Kansas City and is paved with cement. It is intersected by 18th street, which at the intersection, and north of there, is paved with brick. South of the intersection it is improved with a graveled surface. A state highway from the north on 18th street turns west at the intersection on Argentine boulevard. At the center of the intersection there is a covered manhole for a drainage sewer. Directly northeast of the intersection there were high weeds which interfered with the view. Plaintiff lived about 200 yards north of the intersection on the west side of 18th .street. She is married and on her own account conducts a business of dressing chickens—150 or 200 a day, sometimes as many as 500. About 1 p. m. on the day in question she entered a taxicab which she had called to go on a trip. The taxicab proceeded south, with plaintiff as a passenger, on 18th street and turned to the left into Argentine boulevard, and almost immediately collided with a car driven by Ferd Banks, with the result that plaintiff received numerous bruises and injuries. The question whether the driver of the taxicab or Banks was to blame was one of the controverted issues. There appears to be substantial evidence to support findings to the effect that the driver of the taxicab, in making the turn, drove close to the northeast corner of the intersection and collided with Banks' car, which was on its own right-hand side of the street near the corner.

Appellant contends plaintiff's counsel was guilty of misconduct by asking the jury if they owned stock in a certain insurance company. The record on that point is as follows: After the jurors had been called to the box the trial judge stepped into his chambers for a few minutes while the jurors were being examined on their *voir dire*. Counsel for plaintiff asked the members of the panel:

"Q. Does any member of the jury own any stock in the Pennsylvania Casualty Company, an insurance company?"

On objection being made, the judge returned to the courtroom, where the following proceedings were had:

"And thereupon, in open court, while the jury was being drawn, the following oral proceedings were had to the court alone, out of the hearing of the veniremen being examined upon their *voir dire:*

" 'Mr. Herrod: Mr. John Blake, in the examination of the panel just asked this question: "Does any member of the jury own any stock in the Pennsylvania Casualty Company, an insurance company?" And I move to discharge the jury, the panel, for the reason that the jury would now have the idea that the Pennsylvania Casualty Company or some other insurance company was carrying liability insurance in this case on the defendant's cabs.

" 'The Court: Well, I don't know that that is necessarily error.

" 'Mr. Blake: The law requires, if your honor please, or the city ordinance requires, that these companies carry insurance, and this is on record, the insurance policy is on record in the city clerk's office, in Kansas City, Kan.

" 'Mr. Herrod: That is not pleaded. Not a word in the pleadings.

" 'Mr. Blake: That is true.

" 'Mr. Herrod: The casualty company is not a defendant.

" 'The Court: It will be denied, but put on the soft pedal on this insurance business, because I don't know how far you can go. I rather think that is on the border line, but I hardly think it is reversible error. And that question might come up again before we are through.

" 'Mr. Blake: I understand.

" 'The Court: It is my impression that should be permitted, but it is a dangerous proposition to get too much of that kind of thing in the record.

" 'Mr. Blake: I understand. But I may ask that question?

" 'The Court: You have already asked it.

" 'Mr. Blake: But I had no response, because I saw Mr. Herrod start to make an objection.

" 'The Court: All right. Go ahead to that extent.'

"And thereupon, the following oral proceedings were had to both court and jury:

" 'Mr. Blake: I suggest this: May I have an indication of an answer from the jury on the last question I asked? (No response from jury.)' " . . .

The record does not show the matter was referred to again during the trial. It was presented by defendant as one of the grounds in a motion for a new trial. Upon the hearing of the motion the court specifically found:

". . . that counsel for plaintiff was not guilty of misconduct in questioning the jury upon their *voir dire* relative to the prospective jurors being stockholders in an insurance company and that counsel for plaintiff acted in good faith in asking said question; that counsel for the plaintiff did not during the trial of the case attempt to inject the question of insurance or parade the same before the jury in an effort to prejudice the jury."

In this court counsel for appellants stress the procedure as a ground for reversal and argue that it likely affected the controverted question of liability and the amount of the verdict, citing many of our cases.

Normally cases should be tried between the parties to the action. That is common fairness. For the jury in an action for damages

to be informed or given to understand that no matter how much they construe most favorably to plaintiff the evidence on controverted issues of liability, or how liberal they are with the damages allowed, defendant will not have to pay, naturally places defendant in a disadvantageous position. In this state the question of how to deal with the matter has been an annoying one to litigants, attorneys and courts for the last forty years. Looking back over our cases, we are impressed with the view that it would have been better for all concerned if this court would have adhered to its first decision on the question.

In *Swift v. Platte,* 68 Kan. 1, 72 Pac. 271, by a divided court, four to three, it was held:

"2. In the *voir dire* examination of jurors in personal-injury cases brought against corporations or others, it is error to permit counsel for the plaintiff to ask questions which unnecessarily suggest and bring to the attention of jurors the fact that the defendant is insured in an accident company which will pay the fees of the attorneys defending and also any judgments resulting from accidents to employees of defendant.

"3. Considerable latitude should be allowed in the examination of jurors to the end that all who have any bias or prejudice, or are otherwise disqualified, may be excluded from the panel, but the inquiry should never extend so far as unnecessarily to introduce extraneous matter of a prejudicial character that may improperly influence the verdict."

Upon a rehearing granted, confined to the one question, it was decided (68 Kan. 10, 74 Pac. 635) by a divided court, four to three, one of the justices having changed his view:

". . . it is not necessarily error to allow counsel for plaintiff to draw attention to the fact of the existence of insurance companies which indemnify employers against loss or damage which may arise from injuries to their employees, and to conduct an inquiry, in good faith and within reasonable limits, concerning the questions whether such jurors have any connection with, or interest in, such insurance companies, and whether, in case such indemnity exists, it may affect their judgment or the verdict which they may give. . . . The extent of such examination must be left largely to the sound discretion of the trial court, and unless an abuse of it be clearly shown a reviewing court will not interfere."

In *Howard v. Motor Co.,* 106 Kan. 775, 190 Pac. 11, it was held:

"The decision of the trial court as to the good faith of questions asked of a juror on his *voir dire* held to be final." (Syl. ¶ 2.)

This view was followed in *Smith v. Ice and Delivery Co.,* 117 Kan. 485, 490, 232 Pac. 603; *Billings v. Aldridge,* 133 Kan. 769, 776, 3 P. 2d 639, and in *Harmon v. Larabee Flour Mills Co.,* 134 Kan.

143, 146, 4 P. 2d 406. It was criticized but followed—the court divided four to three—in *Peters v. Cavanah,* 132 Kan. 244, 248, 295 Pac. 693. In *Van Pelt v. Richards Paint & Paper Co.,* 132 Kan. 581, 296 Pac. 737, it was held:

"In an action to recover for personal injuries the persistent injection into the case of the fact that the defendant carried liability insurance protecting him from the consequences of his negligence, thus indicating a lack of good faith in bringing the matter before the jury, is reversible error."

In *Holloway v. Telfer,* 136 Kan. 80, 12 P. 2d 826, it was held:

"In an action for damages for personal injuries sustained in an automobile casualty it is gross misconduct for the attorney for plaintiff to inject into the trial before the jury the inference that defendant is protected by indemnity insurance."

However, in that case, because of the method the question was handled in the trial court, and because liability was clear from the record, and the verdict small compared with the injury sustained, the court affirmed the judgment.

In *Sponable v. Thomas,* 139 Kan. 710, 33 P. 2d 721, where defendant was a contract carrier, required by law to carry insurance, such evidence as got into the record relating to the matter (pp. 716 to 719) was held not to constitute prejudicial error.

In *Coffman v. Shearer,* 140 Kan. 176, 34 P. 2d 97, it was held prejudicial error inheres in the verdict and judgment when testimony is deliberately introduced that defendant had stated he carried a large amount of liability insurance.

In *Scott v. Vaughn,* 140 Kan. 529, 531, 37 P. 2d 1012, where similar evidence got into the case inadvertently and was promptly and properly handled by the court, and where the verdict was not excessive, the judgment was affirmed.

In *Pool v. Day,* 141 Kan. 195, 40 P. 2d 396, it was held that voluntary evidence of plaintiff with reference to insured was incompetent and prejudicial and tended to create passion and prejudice and increase the amount of the verdict, which was found to be excessive, and the judgment of the trial court reversed.

In *Forsyth v. Church,* 141 Kan. 687, 42 P. 2d 975, where counsel for plaintiff persistently introduced testimony, admitted over defendant's objection, that defendant was protected by liability insurance, it was held to be grounds for reversal of the judgment.

In *Cannon v. Brown,* 142 Kan. 700, 51 P. 2d 1007, the question got into the record on the testimony of plaintiff in a way held to be

inadvertent, and because of the court's treatment of the matter and the final result it was held not to be reversible error.

In *Witt v. Roper*, 150 Kan. 722, 96 P. 2d 643, where liability was admitted and the only question submitted to the jury would be the amount of the verdict, it was held the verdict was excessive, traceable in part to persistent and prejudicial tactics practiced throughout the trial which were bound to lead the jury to infer that defendant carried liability insurance. In that case the verdict for $2,750 was reduced to $1,250, and if the reduction were accepted was affirmed.

In *Jones v. Pohl*, 151 Kan. 92, 98 P. 2d 175, where the jury had answered special questions without much regard to the evidence, the plaintiff on the *voir dire* of the examination of the jurors had asked a question similar to the one asked in this case. Objection was made to it. The court observed it was a dangerous question, and after some colloquy as to its propriety and whether it was asked in good faith, instructed the jury not to consider it. In reversing the judgment the court (page 97) said:

". . . that in a case such as this, where the insurance company is not a party and no issue on that question is raised by the pleadings, the propounding of such a question to the jury is in itself an indication of a lack of good faith."

In some of the states a line of practice has developed to this effect: If plaintiff desires to ask a question of this character, before doing so he should take the matter up with the court in the absence of the jury and show a reason for doing so. (*Lynch v. Alderton* [W. Va.], 20 S. E. 2d 657; *Carter v. Rock Island Bus Lines*, 345 Mo. 1170, 139 S. W. 2d 458; *Tramill v. Prater* [Mo. App.], 152 S. W. 2d 684; *Lunn v. Ealy*, 176 Tenn. 374, 141 S. W. 2d 893; *Central Transfer & Storage Co. v. Frost* [Ohio App.], 36 N. E. 2d 494; *Kavanaugh v. Parret*, 379 Ill. 273, 40 N. E. 2d 500; *Handley v. Erb*, 314 Ill. App. 207, 41 N. E. 2d 222), and the ruling of the court in such cases is subject to review; and generally, where the matter is said to be within the discretion of the court, it is a judicial discretion subject to review.

In some of our cases, where we have spoken of the practice of asking questions such as was done here, we have characterized it by such terms as "gross misconduct" and "highly prejudicial." Certainly, if the court is to determine whether such a question should be asked, the determination should be made before the question is propounded to the jury, and not afterwards. In this case it does not appear the court had anything more before it to pass upon when

it made a finding counsel had asked in good faith than we have in the record. Certainly the finding was made so late that it could have no effect upon the jury.

In some of our cases, where liability was admitted, or where from the record it seemed to have been clearly established, and where the amount of the verdict was conceded to be reasonable, or clearly indicated from the record to be so, we have preferred to affirm the judgment notwithstanding the prejudicial misconduct of interrogating jurors about insurance when no mention of that matter was made in the pleadings; or have reduced the verdict for that reason. In this case appellants contend the verdict is excessive. While that may be true it is not at all certain from this record. After plaintiff's injuries she was thoroughly examined by physicians and X rays taken. If all of her injuries and disabilities testified to by the physician resulted from this collision it would be difficult to say the verdict is excessive. However, the evidence on that is not clear. Indeed, as to some of her disabilities it is difficult to see how they could have been produced by the collision. To reduce the verdict in any substantial sum might be unfair to plaintiff, yet the amount of it may have been influenced by the fact that plaintiff's counsel asked the question, which at least suggested that an insurance company and not the defendants would have to pay the judgment. In this situation the judgment ought not be allowed to stand. It is just as important to litigants in any case that they have a fair trial as it is that they have a trial at all.

Since there is to be a new trial some other questions raised by appellants should be determined. Plaintiff had testified that she called a physician, who had her go to the hospital for X-ray examinations and who treated her for some time, and that she ordered prescriptions filled from the drug store; also, that because of her injuries she had to employ a person at a stated salary to do her work for a time. The amount of these several items was testified to. Appellants contend that since plaintiff is a married woman her husband is liable for those items, and that they should not be allowed. Irrespective of his liability we see no reason why the plaintiff could not contract and make herself personally liable for her doctor and hospital treatments and her medical bills. She was conducting a business of her own, and the extra expense she was put to by hiring someone to do her work was a proper item to be taken into account.

Plaintiff had pleaded that she had lost time as a result of her

injuries. There was no evidence upon that point other than that she had to employ someone to do her work, and the court in its instructions to the jury eliminated that element of damage and also declined to submit special questions as to what, if anything, was allowed for loss of time. We see no error in that.

Appellants complain that the court reframed one or two of the special questions requested. It is the duty of the court to supervise the form of special questions so as to make them pertinent to the issues and the testimony. We think that duty was properly performed in this case.

Other matters complained of by appellants as trial errors are not likely to occur on the retrial, hence need not be specially treated.

The result is, the judgment of the court below must be reversed with directions to grant a new trial. It is so ordered.