No. 37,510

SHERMAN LAWRENCE, *Appellant,* v. THE KANSAS POWER AND LIGHT COMPANY, and H. H. BRUNER, *Appellees.*

No. 37,511

ALLEN TAYLOR, *Appellant,* v. THE KANSAS POWER AND LIGHT COMPANY, and H. H. BRUNER, *Appellees.*

(204 P. 2d 752)

Opinion filed April 9, 1949.

*Harold L. Doherty* and *F. J. Rost,* both of Topeka, argued the cause, and *Dan Cowie,* of Topeka, was with them on the briefs for the appellants.

*Philip E. Buzick,* of Topeka, argued the cause, and *Clayton E. Kline, M. F. Cosgrove, Balfour S. Jeffrey,* and *Robert E. Russell,* all of Topeka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: These were two actions for damages sustained in a collision of an automobile, in which the plaintiffs were riding, and the defendant's passenger bus, alleged to have resulted from defendant's negligence. The Lawrence case was tried to a jury. The parties agreed the Taylor case would be tried to the court upon the same evidence. At the close of plaintiff's evidence in the Lawrence case defendant demurred to the evidence and moved for judgment "for the reason that the plaintiff had failed to prove any negligence on the part of the defendants, and for the further reason that the plaintiff had shown by his evidence that he was guilty of contributory negligence which would bar his recovery." The trial court sustained the demurrer. No further evidence was offered in the Taylor case and the same demurrer was interposed and the same ruling made thereon as in the Lawrence case. Plaintiffs filed separate appeals, which were consolidated here.

The evidence may be summarized as follows: Sumner street is a north-and-south street in the northeastern part of the city of Topeka, which is a residence district with a few small businesses. It is intersected at right angles by Pennsylvania avenue. Each street is paved with cement twenty-six and one-half feet wide. Neither street is a through street and there is no stop or caution sign on either street at the intersection. Southeast of the intersection is a residence, the north line of which is thirty-two feet south of the south line of Pennsylvania avenue, and the west line is thirty feet east of the east line of Sumner street.

The plaintiff Taylor, forty-five years of age, was a cement contractor and did subcontracting from others. In October, 1947, he was doing the cement work on a group of forty-seven houses being built by a contractor. Sherman Lawrence, forty-four years of age, was working for him as a common laborer, making from $40 to $60 per week. Another of his workmen was LeRoy Hyman. On Oc-

tober 8, 1947, Lawrence and Hyman had been working between nine and ten hours and quit for the day about five o'clock in the afternoon. Taylor offered to take them home, the first time he had done so. He planned to come back to the job and look after some of his business.

Taylor's car was a 1939 Plymouth coupé in good running condition, with good brakes. Taylor was driving. Hyman was sitting in the middle and Lawrence on the right end of the seat. The route took them north on Sumner street through its intersection with Pennsylvania avenue, which they reached about 5:30 p. m. The sun was shining, visibility was good, the pavements were dry and the streets were level at the intersection and each way from it for a block or more. Taylor drove north on Sumner street past the first house southeast of the intersection and when about twenty-five feet south of the intersection both he and Lawrence looked to the east. Lawrence said: "Al, there's a bus," and Taylor replied, "I see it." Both of them thought the bus was traveling about twenty-five miles per hour. That was the maximum speed for motor vehicles traveling that street, as prescribed by the city ordinance. The bus was then about one hundred twenty-eight feet east of the intersection moving west on the north side of the street. Taylor entered the intersection at a speed which he estimated as about fifteen miles per hour. As he entered the intersection he saw the bus, which he then thought was about ninety feet east of the intersection, traveling, as he thought, at about twenty-five miles per hour. Taylor thought he had time to cross the street before the bus would reach the intersection. There was no car in the intersection and none coming from the north or the west. He drove forward, increasing his speed somewhat, but testified he thought he did not exceed twenty miles per hour. When the front of his car was about four feet north of the north line of Pennsylvania avenue and about twelve feet of the rear part of his car was in the intersection defendant's bus struck his car on the rear part of the right side with such force that his car was driven or thrown about fifty-five feet to the northwest and against a tree, two and one-half feet in diameter, which was standing twenty feet west of the west line of Sumner street and thirty-six feet north of the north line of Pennsylvania avenue. As the car reached the tree it was traveling backwards and it struck the tree with such force that it was crushed against the tree. The blow on the car by the bus in the intersection and by the car strik-

ing the tree damaged the car beyond repair. Lawrence was thrown from the car on the parking and was seriously injured. The extent of his injuries is not involved here. Taylor and Hyman were in the car when it stopped against the tree. Taylor was helped out. He was seriously stunned. The extent of his injuries is not involved here. Taylor testified:

"After I got out of my automobile, I had a conversation with the bus driver. We were standing in the parking and the bus driver said to me that he didn't see me and he didn't think I seen him. I said nothing in reply to that. . . . There were no passengers in the bus that I saw. I see these buses around the streets here in Topeka and am acquainted with the type of brakes with which they are equipped. They are air brakes. They make a noise when they are applied. . . . I did not hear the application of any air brakes. . . . I did not hear the honking of any horn."

Ernest Piat, a police officer, who reached the scene soon after the collision, testified in part:

"At the scene of this collision I had a conversation with Allen Taylor and also with the driver of the bus, Mr. Bruner. With particular reference to the bus driver, Mr. Bruner, I asked him the location of where the first impact occurred, and he was of the opinion that the impact occurred a little farther south into the intersection than where the paper says where I took my measurements. Then I asked him, after the routine questions, his name, etc., and he was of the opinion he was going twenty-five to thirty miles per hour. I asked him how the accident occurred or what happened and he said he didn't know, and I asked him if he saw the other car and he made the statement that he didn't see it and he probably would have struck him if he had been going five or ten miles per hour, or words to that effect."

The bus had stopped before it was entirely through the intersection.

Bill Coleman, a police officer, reached the scene soon after the collision and among other things testified:

"Mr. Bruner, the bus driver, walked up to me at that time and I told him to move his bus, and that was all the conversation I had with him at that time. The next conversation I had with him was after the ambulance had arrived, and then I questioned him concerning the accident. . . . In my second conversation with Bruner, I asked him what had happened and he said he didn't know; that he didn't see the Taylor car. I asked him how fast his bus had been driving prior to the collision and he said that he was driving at a normal speed himself and that he didn't think the other car was going much faster. I questioned Mr. Taylor as to how fast he might have been going, and he said around twenty-five miles per hour."

In considering the demurrer to the evidence the court had no authority to weigh the evidence and was bound to consider the

evidence offered by plaintiff, and all the reasonable inferences which could be drawn therefrom, most favorable to the plaintiff. (See *Waugh v. Kansas City Public Service Co.*, 157 Kan. 690, 143 P. 2d 788; *Gabel v. Hanby*, 165 Kan. 116, 193 P. 2d 239; *Appleby v. Board of County Comm'rs*, 166 Kan. 494, 203 P. 2d 224.

The above summary of the evidence has been compiled with that in view. In examining the witnesses counsel had a plat of the intersection and the near-by portion of the streets, which plat had been drawn to scale. In asking the witnesses where they were at the particular times, or where the bus was at different times, each witness was asked to mark on the plat his idea of the location in question. The distance east of Sumner street, where the bus was when Lawrence and Taylor first saw it and where Taylor saw it as he entered the street, was taken in the above summary from the marked place on the plat by Taylor.

The legal questions here involved are so well settled in our law that they need not be labored. The actions were ones at common law in which plaintiffs sought damages alleged to have resulted from defendant's negligence, and defendant had pleaded contributory negligence of the plaintiffs. These are the kinds of actions in which each party is entitled to a trial by jury as a matter of right. They should not be converted into trials by the court. Negligence is the lack of due care. The instances are relatively rare when the facts are such that the court should say that as a matter of law the negligence alleged has been established. Before the court should make such a holding the evidence should be so clear that reasonable minds, considering it, could have but one opinion, namely, that the party was negligent. In these cases we think the contributory negligence of plaintiffs was clearly a question of fact for the jury. More than that, plaintiffs were not required to anticipate that with their car in the intersection defendant's bus would be driven into it and against their car at a speed of twenty-five to thirty miles per hour, with its driver not watching enough to know that the car was in the intersection. Under the evidence the jury might very well have found such acts of defendant to be the proximate cause of the injury.

At the time of the ruling upon the demurrer the trial court expressed the view that the warning given by Lawrence was not enough. We think the most that can be said for the defendant in that regard is that it was a question for the jury. Appellees cite

and appear to rely upon *Curtiss v. Fahle,* 157 Kan. 226, 239, 139 P. 2d 827, where the passenger said to the driver, "Look out, Chuck." Under the facts in that case the court held the warning was given too late. It was not held insufficient because of the words used. Here, the warning was timely made. In *Witte v. Hutchins,* 135 Kan. 776, 12 P. 2d 724, where the guest said, "Look out," and no more, the question of whether that was sufficient was held for the jury. And in *Steele v. Russell,* 162 Kan. 271, 273, 176 P. 2d 251, where the plaintiff called out to the driver, "Car," the defendant filed a motion for a directed verdict on account of the insufficiency of the warning. The motion was overruled by the trial court and the ruling was affirmed here.

Our attention is called to G. S. 1947 Supp. 8-550, which is also embodied in the revised ordinance of the city of Topeka, section 25-532, which provides:

"(a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.

"(b) When two vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

It is clear under the evidence that the car in which plaintiffs were riding entered the intersection first, for it had traveled about thirty feet before it was struck, while defendant's bus, traveling at as high or a higher rate of speed than plaintiff's car, had passed through only about nine feet of the intersection when it struck the car. Under the evidence, subsection (a) of the statute is applicable and subsection (b) is not.

In the Taylor case appellee makes the point here that the amount of damages sustained by plaintiff was not shown. This point was not raised by defendant's demurrer, and the record does not show that it was presented to or considered by the trial court. Therefore, the appellee is in no position to raise the point here for the first time.

The judgment of the court below in each case is reversed with directions to grant a new trial.

THIELE and WEDELL, JJ., dissenting.