No. 37,853

Robert W. Thompson, *Appellee*, v. Annie Barnette, *Appellant*.

(227 P. 2d 120)

Opinion filed January 27, 1951.

*W. S. Norris*, of Salina, and *L. E. Weltmer*, of Mankato, argued the cause and were on the briefs for the appellant.

*A. W. Relihan*, *T. D. Relihan*, and *Terry E. Relihan*, all of Smith Center, and *George Teeple*, of Mankato, were on the briefs for the appellee.

The opinion of the court was delivered by

Price, J.: This is an action to recover for personal injuries and property damage arising out of an automobile collision which occurred at an intersection of two county roads, neither of which was marked nor a through road, a short distance from Esbon in Jewell county.

Plaintiff was seriously and permanently injured and brought suit to recover damages in the amount of $25,000. Defendant's answer and cross-petition denied defendant's negligence, alleged contributory negligence on the part of plaintiff and sought to recover the sum of $409.41 damages to defendant's automobile on account of plaintiff's negligence. From a verdict and judgment for plaintiff in the amount of $10,000 defendant has appealed.

A brief summary of plaintiff's evidence, sufficient for our purpose, shows the following:

Plaintiff was a farmer, thirty-one years of age, and lived with his wife and two young children. At about noon on July 27, 1947, he and his two children, who were in the back seat, were returning to their farm home from the elevator at Esbon. The day was clear and the highway dry. Plaintiff's car was a 1934 model Ford two-door, in good working order. He was driving north and the road was level for some distance both north and south of the intersection in question. He had driven over the road many times and was familiar with the intersection. It was what is known

as a "blind corner," particularly right at the southeast corner thereof, on account of an embankment on the east side of the north and south road covered with weeds and brush, and hedge trees on the south side of the east and west road. The latter road was not level, there being a downgrade for several hundred feet east of the intersection, the latter being right at the crest or brow of the hill, so to speak. Plaintiff testified that as he approached the intersection he was driving between fifteen and twenty miles per hour; that he slowed down, looked both ways, and then drove into the intersection at a speed of thirteen or fourteen miles per hour; that when he got into the intersection he first saw defendant's car approaching from the east, coming "like a rocket," and that he "stepped on the gas" in an effort to get out of the way; that defendant's car hit his car in the center of its right side with such force as to cave the right door into the gearshift lever and spring the frame so that the left door flew open throwing plaintiff out over into a grader ditch at the northwest corner of the intersection, and his car rolled over and finally came to a rest upside down on top of plaintiff, pinning him underneath. As before stated, he suffered severe and permanent injuries, but in view of defendant's concession that the verdict and judgment are not excessive if plaintiff is entitled to recover, they will not be detailed.

As a result of the impact defendant's car was turned almost directly around in its tracks so as to be heading east in about the middle of the intersection, with its right rear wheel two feet north of where it had come up the road.

A number of other witnesses testified in behalf of plaintiff, but their testimony need not be narrated.

At the conclusion of plaintiff's evidence defendant demurred on the ground the evidence failed to establish negligence of defendant, and for the further reason it convicted plaintiff, as a matter of law, of contributory negligence so as to bar his recovery. This demurrer was overruled.

Defendant testified that she had driven an automobile for a number of years; that prior to reaching the grade east of the intersection she was driving about forty miles per hour, but that as she came up the grade she slowed down to about twenty miles per hour, that being her speed as she entered the intersection; that she first saw plaintiff's car just as she entered the intersection; that it was just a

"flash" to her left and then the crash, and she estimated plaintiff's speed at fifty to sixty miles per hour.

The jury returned a general verdict for plaintiff in the amount of $10,000, and answered fifteen special questions. In substance, it found that plaintiff entered the intersection first; that defendant drove her car into the side of plaintiff's car; that at the time of the collision defendant was not driving her car at a proper and reasonable rate of speed, and that the collision would have been avoided had she been doing so; that plaintiff was driving in a careful and proper manner as he entered the intersection; that he was injured as a direct and proximate result of defendant's negligence; that each driver was driving at an estimated thirty miles per hour as each entered the intersection; when plaintiff first saw defendant's car plaintiff's car was just north of the south line of the intersection and defendant's car was a short distance east of the intersection; that plaintiff observed the speed at which defendant was traveling; that at approximately twelve feet south of the point of impact plaintiff could first have seen defendant's car by looking to his right; that plaintiff made an attempt to get out of the way, and that the collision was not the result of an unavoidable accident.

Defendant filed a motion for judgment notwithstanding the verdict and the answers to special questions on the ground the special findings convicted plaintiff of contributory negligence, barring his recovery. This motion was overruled.

Defendant then moved to set aside and vacate the general verdict and the answers to certain special questions. This motion was also overruled. Defendant then filed a motion for new trial containing seventeen grounds and at the hearing thereon presented an affidavit, which will be noted later, touching the qualification of the trial judge to sit in the case. This motion was overruled, judgment was entered upon the verdict, whereupon defendant appealed. Fourteen specifications of error are alleged.

The facts of this case are very simple and the evidence introduced by both parties was relatively brief. However, the abstract and counter abstract before us contain some 227 pages, a very large portion of which consists of argument between counsel and between court and counsel. To take up and discuss in detail each of the many grounds relied on as error would extend this opinion beyond all reason and at the same time would contribute nothing to the body of our law on the questions discussed. It is strenuously argued

that the court erred in refusing to give certain special questions and instructions; in giving certain instructions and special questions; that the answers to special questions are inconsistent with each other and with the general verdict, and that as a matter of law such answers convict plaintiff of contributory negligence. We have examined in detail the requested instructions and those given by the court and in our opinion, taking them as a whole, the jury was properly instructed with reference to all material matters in controversy. Furthermore, we think the special questions submitted were not improper and that defendant was in no way prejudiced by the court's refusal to submit other questions which were requested.

However, there are a number of matters presented by the record which are vigorously urged by defendant and which we feel should be discussed. The first is the matter of plaintiff being permitted to file a reply and answer to defendant's answer and cross-petition out of time. It appears this was done at the close of plaintiff's evidence and defendant contends that such was error. However, she fails to point out in what respect, if any, she was thereby prejudiced. This was an ordinary personal injury case, resulting from the collision of two automobiles at an intersection. Each party knew what the claims of the other were and we fail to see wherein defendant was in any way prejudiced. Such being the case, defendant's claim in this respect is without merit. (G. S. 1935, 60-3317.)

Defendant also argues that the court erred in overruling her demurrer to plaintiff's evidence, the argument being that the evidence not only failed to show any negligence of defendant, but affirmatively showed contributory negligence on the part of plaintiff, thus barring his recovery. We will not labor the question, but merely call attention to the long-established rule that in a fact case such as this before a trial court should sustain a demurrer to the evidence such evidence should be so clear that reasonable minds considering it could have but one opinion, namely, that the party adducing it was guilty of contributory negligence. (*Lawrence v. Kansas Power & Light Co.* 167 Kan. 45, 204 P. 2d 752.) Without again summarizing plaintiff's evidence, we think it presented a situation where reasonable minds might differ as to just who was negligent and that being the case it clearly was a question to be presented to the jury. The lower court did not err in overruling the demurrer.

Complaint is also made that by a persistent and designed effort

on the part of counsel for plaintiff the probability and fact that defendant was covered by liability insurance was injected into the case, and counsel cites three instances occurring during the trial. The first occurred during the *voir dire* examination of the jury panel by plaintiff's counsel when it developed that a prospective juror was engaged in the "farming and insurance business." Counsel pursued the subject further and brought out the fact this juror sold automobile liability insurance and frequently adjusted losses in Jewell county. This examination took place in the presence of the other prospective jurors and defendant claims it was so "pointed" as to give the whole jury panel the very definite impression that an insurance company was involved in the case.

Later, during the trial, while plaintiff was on the witness stand, counsel for defendant made inquiry concerning what was done with plaintiff's car after the collision and it developed that defendant's counsel had seen plaintiff about the matter while the latter was in the hospital. On redirect examination counsel for plaintiff asked, "Was that before the suit was filed that this gentleman, Mr. Norris, was up to see you at the hospital?" Plaintiff's answer was, "Yes, he come to the hospital and said that he represented the insurance company." Counsel for defendant immediately moved for a mistrial and that the jury be discharged. This motion was overruled, whereupon the jury was excused pending further argument on the motion. Following this argument the court adhered to its former ruling, and still later in the trial, when the motion was renewed, counsel for plaintiff consented that the answer to the question be stricken and the jury admonished to disregard it. Counsel for defendant refused to agree to such procedure on the ground the damage had already been done and that any further reference to the subject of insurance would merely magnify and emphasize in the minds of the jury the probability and fact that defendant was covered by insurance. As a result, no admonition or instruction concerning the matter was given to the jury.

In furtherance of the alleged "scheme and plan" on the part of plaintiff's counsel, defendant complains of a statement made by counsel for plaintiff in his argument to the jury, which ran like this:

". . . As a matter of fact Mr. Norris wasn't down at that hospital to see that car to find out where it was. He was down there to get a statement out of that boy. That is why he was down there, that would prevent him from recovering in this lawsuit and that is the truth of it."

It is argued that this statement again reminded the jury that an insurance company was involved in the case.

Defendant calls our attention to what was said in *Coffman v. Shearer,* 140 Kan. 176, 34 P. 2d 97; *Witt v. Roper,* 150 Kan. 722, 96 P. 2d 643, and *McGuire v. McGuire,* 152 Kan. 237, 103 P. 2d 884, with reference to the matter of insurance being injected into a case of this kind. No good purpose would be served in reviewing those authorities for, as we read this record, it is not made to appear that any prejudice resulted from what manifestly appears to have been an inadvertent reference on the part of plaintiff while on the witness stand. Indeed, the trial court in denying the motion for a mistrial and to discharge the jury commented that he was well satisfied there had been no intentional misconduct by counsel and that the mention of insurance was purely inadvertent. We feel compelled to agree, and so far as the examination of the one juror is concerned it surely cannot be argued that counsel for either side, in any kind of a lawsuit, would select a jury without first making inquiry concerning the business or occupation of the members of the jury panel. Furthermore, it appears that here eighteen jurors were empanelled and after the list was made up each side struck three names and the remaining twelve were sworn to try the case. The record does not indicate that even if this particular juror's name was stricken from the list by plaintiff it was done in such a manner that the remaining members had any information concerning the fact.

And we are also of the opinion that counsel for defendant attaches far more significance to the statement contained in plaintiff's argument to the jury than is due it. A considerable latitude naturally is allowed counsel in arguing to a jury provided counsel stays within the record, and we think that perhaps defendant's complaint in this respect might well be based upon the fact this trial was hotly contested and was interrupted throughout by constant bickering and argument between counsel. While of course not conclusive on the matter, yet it is significant to note that here the plaintiff, a young man, is undoubtedly crippled for life, and yet the jury returned a verdict of $10,000, when the sum of $25,000 was prayed for. We are unable to say that concerning this feature of the case the matters complained of resulted in any bias or prejudice on the part of the jury.

Complaint is also made of another incident during the trial. While defendant was being cross-examined she was asked about the

title certificate to her car. She did not have it with her and was asked to produce it the next day. In the meantime defendant's evidence was completed, defendant rested, and no rebuttal was offered by plaintiff. On the next day defendant was granted leave to reopen the case so as to introduce the title certificate requested by plaintiff's counsel on the previous day, and for one other question on redirect examination. Defendant produced and identified the title certificate and then was asked one additional question concerning whether she heard the horn of any automobile as she approached the intersection or at any time before the collision. She answered in the negative, whereupon one of plaintiff's counsel proceeded to ask her about her ownership of real estate and personal property and about conveyances by her subsequent to the date of the collision. Defendant's counsel objected to this line of questioning on the ground it was not proper cross-examination and for the further reason that it was entirely outside the issues and incompetent, irrelevant and immaterial. Then followed considerable argument between counsel and between court and counsel, a large portion of which was in the presence of the jury. Defendant's objections were overruled and the court in so ruling commented that any conveyances of property by defendant subsequent to the date of the collision would be competent to show her mental attitude with reference "to certain things in this case"; that people are not allowed to dispose of their property for the purpose of avoiding liability, and that it was competent to show the attitude of a person by showing such conveyances. Plaintiff's counsel pursued the matter further and it developed that one such conveyance concerned a homestead right of defendant and another concerned property already owned by the grantee, but to whom no conveyance had previously been made. The questions and answers, together with objections by defendant and argument thereon and comments by the court, cover some nineteen pages of the abstract, and finally counsel for plaintiff consented that the court could and should strike out this line of testimony and admonish the jury to disregard it. This was done.

Defendant argues that this evidence was highly prejudicial, incompetent, irrelevant and immaterial; that its only purpose was to prejudice defendant in the eyes of the jury, and that once having gotten before the jury the error was not cured by the fact the court ultimately struck it out with an admonition to disregard it.

We concede that such evidence was outside the issues and that

it had no place in this lawsuit, but we cannot agree with counsel that its prejudicial effect, if any, was such as to constitute reversible error. It is seldom, if ever, that in the trial of a sharply contested lawsuit some prejudicial, incompetent, irrelevant and immaterial evidence does not find its way into the record. In such instances it should be stricken and the jury admonished to disregard it, just as was done in this case. It is for the lower court, in the first instance, to determine, in its sound discretion, whether prejudice has resulted, and for this court, on appellate review, to determine whether such discretion of the lower court has been abused. In the light of the entire record we cannot say the incidents just referred to were so highly prejudicial as to constitute reversible error.

And finally, one other ground for reversal is urged. At the hearing on the motion for a new trial counsel for defendant presented and filed an affidavit, counsel being the affiant, in which it was alleged that the trial judge was a second cousin by blood of the plaintiff; that by reason of such relationship he was disqualified to sit and preside as judge in the trial; that at no time during the trial or prior thereto did the trial judge, or plaintiff or his attorneys disclose such relationship to defendant or her counsel; that all proceedings were therefore a nullity on account of not being had before a judge pro tem. On the argument and discussion concerning this affidavit it developed that the trial judge and plaintiff's mother were first cousins by blood.

While perhaps better practice would dictate that under such circumstances a trial judge should apprise the parties beforehand and step aside, if so requested, yet the real issue before us is whether as a matter of law the trial judge in this case was disqualified to sit. G. S. 1935, 20-305, provides that a judge pro tem *may* be selected when the judge is related to either of the parties. G. S. 1947 Supp. 20-311, provides that in any contested civil or criminal case where any party to such case is related to the district judge within the degrees mentioned in the statute, such district judge *shall* be disqualified from hearing the case. However, the prohibition of the statute does not extend to the relationship of cousin in any degree, and notwithstanding section 305, *supra,* the terms of section 311, *supra,* clearly did not disqualify the trial judge in this case as a matter of law. Furthermore, nowhere is it made to

appear that such relationship in any way influenced the trial judge or that any prejudice to defendant resulted thereby.

As before stated, many grounds other than those specifically discussed are urged by defendant for a reversal of this case and the granting of a new trial. We have given careful consideration to each and every contention advanced by defendant but are constrained to hold that the record before us contains nothing which would warrant the granting of a new trial. The judgment of the lower court is therefore affirmed.

PRICE, J. (dissenting): I do not agree that no reversible error was committed in the trial of this case, but will state my views very briefly.

This was not a case where liability was *clearly* established. The facts concerning the negligence of the parties were very "close." It seems to me that in such a case the incompetent, irrelevant and immaterial evidence that got before this jury would be more likely to result in prejudice than it otherwise would. Plaintiff's answer in which he quoted defendant's counsel as saying that he "represented the insurance company" was entirely uncalled for and was not even responsive to the question asked. I quite agree with defendant that for the court to admonish the jury concerning it would merely have emphasized in their minds the fact that defendant was covered by insurance. The damage had already been done.

The cross-examination of defendant concerning what property she owned and what she had conveyed since the collision was not only improper cross-examination but was clearly outside the issues and highly prejudicial. This was a simple personal injury suit, for actual damages only. The issues concerned the negligence of the parties and the damages sustained. Such line of testimony could have been introduced for one purpose only—to prejudice defendant in the minds of the jury—and in my opinion its prejudicial effect was not cured by the fact it was later stricken and the jury admonished to disregard it. The damage had already been done. That such prejudicial effect can be overcome by the futile gesture of striking from the record and admonishing the jury is unmitigated fiction.

In the light of this whole record, showing the foregoing and a number of other things occurring during the trial, I am unwilling to

say that the defendant received the fair trial to which every litigant is entitled. I would reverse and grant a new trial.

·THIELE and WEDELL, JJ., concur in the foregoing dissent.